**Robert Dale McKINNEY,
Plaintiff–Appellant,**

v.

**Gary MAYNARD, Director, Dept. of Corrections; Earl Allen, Warden, McLeod Corr. Center, Defendants–Appellees.**

No. 89–7105.

United States Court of Appeals,
Tenth Circuit.

Dec. 23, 1991.

5. The trial judge was satisfied the missing bundles had been sent to the laboratory in Dallas.

F. Browning Pipestem, Norman, Okl., for plaintiff-appellant.

Gay Abston Tudor, Asst. Atty. Gen., (Susan B. Loving, Atty. Gen., with him on the brief), Oklahoma City, Okl., for defendants-appellees.

Before MOORE and TACHA, Circuit Judges, and KANE, District Judge.*

JOHN P. MOORE, Circuit Judge.

Robert Dale McKinney, formerly an inmate at the Howard McLeod Correctional Center in Farris, Oklahoma, appeals the dismissal of his pro se complaint as frivolous under 28 U.S.C. § 1915(d). Mr. McKinney, an adopted Sioux Indian, filed suit under 42 U.S.C. § 1983, alleging a violation of his First Amendment right to practice his Native American religion and seeking declaratory and injunctive relief to prohibit Oklahoma prison authorities from enforcing a prison grooming code against him; to require prison officials to return his medicine bag; and to permit the construction of a sweat lodge at the correctional facility. Additionally, he requested damages in an unspecified amount. Because Mr. McKinney's complaint contains "an arguable basis either in law or in fact," *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989), we vacate the dismissal and remand.

We note initially Gary Maynard and other named prison officials (the State) have moved for summary disposition of this appeal on the ground that because Mr. McKinney has been transferred from McLeod and is currently on pre-parole status, this action is now moot.[1] We heartily disagree. Not only are Mr. McKinney's damage claims unaffected by his transfer, but also his injunctive claims survive as well. *Morales v. Schmidt,* 489 F.2d 1335 (7th Cir.1973). Even as a parolee, circumstances may result in Mr. McKinney's reinstitutionalization. Thus, the acts of which he now complains are subject to reoccurrence, and the issues he raises are not moot. *Id.* at 1336; *see also Diamontiney v. Borg,* 918 F.2d 793, 795, n. 1 (9th Cir.1990). We therefore proceed to the merits of this appeal.

## I.

Upon his incarceration at McLeod, a minimum security facility, Mr. McKinney was ordered to turn in his medicine bag.[2] When his hair grew longer, prison officials ordered him to cut it and denied his request for an exemption from the grooming code.[3]

* The Honorable John L. Kane, Jr., United States District Court Judge for the District of Colorado, sitting by designation.

1. Since filing this complaint, Mr. McKinney was transferred to Mack Alford Correctional Center and then to Jackie Brannon Correctional Center. In February 1991, McKinney was placed in community treatment at the Clara Waters Community Treatment Center in Oklahoma City. Since May 1991, he has been on pre-parole status.

2. At oral argument, plaintiff's counsel explained the medicine bag was a small leather pouch containing sacramental tobacco.

3. In a report prepared by the Department of Corrections (DOC), a team of prison evaluators, the Phoenix Unit, concluded Mr. McKinney's religious beliefs were sincerely held. "He practices his religion and holds no malice in his heart towards those that do not understand. The committee recognizes such and is sympathetic to his cause, ideology, and religious beliefs." Despite this evaluation, he was written up on a daily basis for failing to comply with the grooming code.

Later, in response to his desire to participate in a sweat lodge ceremony, Mr. McKinney met with the warden who permitted him to submit plans for constructing the sweat lodge. Mr. McKinney supplied the drawings and materials list which included willow poles, canvas squares, firewood, and rocks. However, the warden summarily denied the request stating the materials were unavailable, and the sweat lodge was a security risk. Despite Mr. McKinney's desire to worship as a Keeper of the Pipe, his suggested alternatives were ignored. After his administrative appeals were denied, he filed this suit.[4]

In his pro se complaint, Mr. McKinney described himself as a Pipe Carrier for the citizen Band Potawatomi Indians of Oklahoma[5] and set forth allegations in support of his claim that he had been denied the religious freedom to worship in his Native American traditional practice.[6] In response to the district court's order under *Martinez v. Aaron*, 570 F.2d 317 (10th Cir.1978), the State filed a Special Report addressing the questions of the grooming code violation, the confiscation of the medicine bag, and the rejection of the request to construct a sweat lodge at the facility. The Report indicated a complete audit of the McLeod chapel provided for worship established the facility had complied with prison specifications, and constructing a sweat lodge would not meet the fire marshal's safety standards and threaten security at the facility. The Report explained the medicine bag was confiscated as unauthorized property upon plaintiff's initial processing for incarceration. Finally, the Report stated that Mr. McKinney's request for an exemption from the grooming code had been rejected, and "Native Americans are not going to be exempted from the grooming code on the basis of their religious claim (Exhibit H)."

In its order, the district court accepted the findings of the Report and concluded Mr. McKinney had not been deprived of his First Amendment rights "by denying him use of ceremonial items which violate reasonable and necessary regulations for prison safety and security." Therefore, the district court dismissed the complaint as frivolous under § 1915(d).[7]

## II.

■■■ We know "convicted prisoners do not forfeit all constitutional protections by reason of their convictions and confinement in prison," *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979), and "clearly retain protections afforded by the First Amendment." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Although the practice of Native American traditional religion may not conform as neatly to those accommodations already provided in a prison setting, that, standing alone, neither renders the claim of a Native American worshipper frivolous nor terminates the responsibility of prison officials to consider some accommodation. Indeed, the fact that prison authorities have made accommodations to other religions should provide some guidance in determining the friv-

---

4. Suit was filed after Mr. McKinney was transferred to Mack Alford, a higher security facility. That transfer was precipitated by Mr. McKinney's repeated refusal to comply with the grooming code.

5. This title, like that of Keeper of the Pipe or Shaman, compares to that of Chaplain.

6. The record includes Mr. McKinney's statement his long hair is integral to his sense of going before the Creator as a "whole person." Also attached to his complaint was a proposed "Consent Decree" in which Mr. McKinney requested, for example, that DOC appoint a spiritual representative from each tribe to minister to incarcerated Native Americans under the same terms and conditions as other chaplains, and a procedure for exempting Native Americans from the grooming code.

7. Included in the dismissal was the conclusion Mr. McKinney had been granted an exemption from the institutional grooming code based on DOC representations. However, although the State represents an exemption was granted, the misconducts were expunged, and Mr. McKinney was transferred to a lower security facility, we have no documentation of those facts in the record. Moreover, at oral argument, the State told the panel it understood the grooming code exemption had been rescinded, and no exceptions would be made for Native American prisoners.

olousness of Mr. McKinney's claim. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). Most importantly, we do not evaluate such claims in a vacuum but are guided by established substantive and procedural principles.

■] First, we recognize, "[w]hen a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1987). To this end, *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1974), sets forth a balancing test to determine whether a prison regulation impinging on inmates' constitutional rights is nevertheless valid because it is reasonably related to legitimate penological interests. *Turner* offers four factors for the district court to consider: (1) whether there is a "valid, rational connection" between the prison action and the "legitimate government interest put forward to justify it," *id.* at 89, 107 S.Ct. at 2262; (2) if there are alternative means of exercising the right that remain open to prison inmates, *id.* at 90, 107 S.Ct. at 2262; (3) whether the "impact [that] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," *id.;* and (4) whether "obvious, easy alternatives" to the disputed prison activity are present. *See also Frazier v. Dubois,* 922 F.2d 560, 562 (10th Cir.1990).

■ Second, in evaluating a complaint under § 1915(d), we have stated a Martinez report should be used "only to identify and clarify *bona fide* disputes, not to resolve them." *Reed v. Dunham,* 893 F.2d 285, 287 (10th Cir.1990). "A bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the *Martinez* report are less specific or well-documented than those contained in the report." *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991). "Whenever a plaintiff states an *arguable* claim for relief, dismissal for frivolousness under § 1915(d) is improper, even if the legal basis underlying the claim ultimately proves incorrect." *McKinney v. State of Okla. Dept. of Human Servs.,* 925 F.2d 363, 365 (10th Cir. 1991).[8]

■ Despite the *Turner* framework and the articulated strictures for a § 1915(d) dismissal, the district court accepted the DOC's Special Report as conclusive and dismissed the complaint. However, given Mr. McKinney's allegations that he has been deprived of all means of religious expression by being forced to comply with the grooming code, by relinquishing his medicine bag when inmates are permitted to wear necklaces and pendants of a specified size in minimum security facilities, and by having no means to practice his religion while incarcerated,[9] we conclude the complaint cannot be dismissed as frivolous under § 1915(d). *Neitzke,* 109 S.Ct. at 1831.

We therefore vacate the dismissal and remand the case for proceedings incorporating the analysis set forth in *Turner.* We further note *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 352, 107 S.Ct. 2400, 2406, 96 L.Ed.2d 282 (1987), enhanced the inquiry the district court must undertake to

---

**8.** Because a *Martinez* report may be treated like an affidavit, *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991), uncontroverted, it may, however, serve as the basis for a dismissal under Fed.R.Civ.P. 12(b)(6), which is decided under a distinct legal standard. *McKinney v. State of Okla. Dept. of Human Servs.,* 925 F.2d 363, 365 (10th Cir.1991); *Hall,* 935 F.2d at 1109.

**9.** *Indian Inmates of Nebraska Penitentiary v. Gunter,* 660 F.Supp. 394 (D.Neb.1987), notes that Nebraska operates seven sweat lodges at six state correctional facilities. Against this background, the court addressed plaintiff's First Amendment challenge to prison officials' refus-

al to permit him to participate in a particular sweat lodge ceremony because of his protective custody status at the facility. Figured into the court's decision as well was its finding that although deprived of participating in that ceremony, plaintiff had other means to practice his Native American religion. *See also Allen v. Toombs,* 827 F.2d 563, 567 (9th Cir.1987) (nondisciplinary prisoners have access to sweat lodge); *Mathes v. Carlson,* 534 F.Supp. 226, 228 (E.D.Mo.1982) (finding Native American's claim for sweat lodge moot because American Indian Sweat Lodge program was instituted at Missouri federal prison).

examine whether under the regulations at issue, Mr. McKinney retains any "ability to participate in other [Native American] religious ceremonies." [10] While legitimate penological objectives remain in the balance, those interests do not categorically negate the mettle of Mr. McKinney's First Amendment claim.

VACATED AND REMANDED.

---

**10.** In *O'Lone,* 482 U.S. at 342, 107 S.Ct. at 2400, the Court found although Muslim prisoners' request to participate in a weekly congregational service could not be accommodated because of the unreasonable burden so created for prison personnel, Muslim prisoners were not deprived of "all forms of religious exercise," *id.* at 352, 107 S.Ct. at 2406, and "freely observe a number of their religious obligations." *Id.*

