**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 12 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

JOHNNIE LOUIS McALPINE,

       Plaintiff-Appellant,

v.

RON THOMPSON,

       Defendant-Appellee.

No. 96-6124

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CIV-94-1406-L)

John J. Carwile (Ronald W. Little with him on the briefs), Doerner, Saunders,
Daniel and Anderson Tulsa, Oklahoma, for Plaintiff-Appellant.

Kay Sewell, Assistant United States Attorney (Patrick M. Ryan, United States
Attorney, with her on the brief), Oklahoma City, Oklahoma, for Defendant-
Appellee.

Before **EBEL, BRISCOE**, and **LUCERO**, Circuit Judges.

**EBEL**, Circuit Judge.

In August 1994, while incarcerated in a federal facility, Johnnie Louis

McAlpine ("McAlpine"), a member of the Native American Church, brought a pro

se action in federal court under the First Amendment and the Religious Freedom Restoration Act of 1993 ("RFRA"), seeking to compel Warden Ron Thompson ("Thompson" or "Warden") to provide him with peyote and other "necessary items" to conduct Native American Church ceremonies. The district court reached the merits of McAlpine's claims and granted the Warden's motion to dismiss, or in the alternative, for summary judgment. McAlpine appeals. We hold that McAlpine's subsequent release from federal prison on supervised release moots his claims, thereby depriving us of jurisdiction. Accordingly, we VACATE the district court's order and REMAND with instructions to DISMISS.

## BACKGROUND

According to the pleadings, McAlpine is a restricted Osage Indian and a member of the Native American Church. At the time he filed this action, on August 24, 1994, in the United States District Court for the Western District of Oklahoma, he was incarcerated at the Federal Prison Camp in El Reno, Oklahoma ("El Reno"), serving a forty-six month sentence for mail fraud. McAlpine's petition for mandamus, the denial of which is the subject of the present appeal, alleged that Warden Thompson's refusal to provide peyote for Native American Church services violated his rights under the First Amendment and the RFRA, and prayed for the following prospective mandamus relief: "1) . . . the Court to order

Warden Thompson to provide peyote for the Native American Church Ceremonies. 2) . . . plaintiff requests that the Court orders the Warden to provide the necessary items needed for the Native American Churches [sic] evening through noon services once a month (to include meals, peyote, tipi, and outside, visiting, roadmen, firemen and singers)."

The magistrate judge considered the merits of McAlpine's claim and found that the Warden's denial of peyote and other ceremonial items to McAlpine did not violate the First Amendment or RFRA, and thus recommended that the district court grant Thompson's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. On March 25, 1996, the district court adopted the magistrate's findings and recommendation, and granted Thompson's motion. McAlpine filed his timely notice of appeal on April 1, 1996.

Thereafter, on November 1, 1996, McAlpine completed his term of incarceration and was released from El Reno Prison Camp. Arguing that McAlpine sought relief regarding only the conditions of his confinement, and his ability to practice his religion while incarcerated, the Warden now claims that McAlpine's claims have been mooted.[1] We agree. Accordingly, we VACATE the

---

[1]Because he was incarcerated at the time he filed this action, McAlpine made no claim that supervised release guidelines prohibit use of peyote, or, if so, that such a prohibition violates the First Amendment or RFRA. His claim related solely to the conditions of his confinement at El Reno.

district court's order and REMAND to the district court with instructions to DISMISS McAlpine's petition as moot.

## DISCUSSION

**Mootness**

Before reaching the merits of McAlpine's First Amendment and RFRA claims, we must consider the jurisdictional question of mootness. Warden Thompson argues that McAlpine's claims are moot because the only relief sought by McAlpine "deal[s] with desires during his incarceration," and he is no longer incarcerated. McAlpine responds that because he "remains on supervised release (parole) through November 1, 1999" and "he is subject to revocation of his parole and reincarceration," the acts he complains of are capable of repetition, yet evading review. Thus, the issue before us is whether the claim of a prison inmate seeking prospective mandamus relief solely related to conditions of confinement becomes mooted by that inmate's subsequent release on parole or supervised release. We answer that question in the affirmative.

Upon previous consideration of this question, this court has issued potentially conflicting decisions. Compare White v. State of Colo., 82 F.3d 364, 366 (10th Cir. 1996) (claims for prospective injunctive relief mooted by inmate-plaintiff's release on parole because possibility of parole revocation "is too speculative" to come under the "capable of repetition, yet evading review"

- 4 -

exception), with McKinney v. Maynard, 952 F.2d 350, 351 (10th Cir. 1991) (inmate-plaintiff's claims for injunctive relief to allow him to engage in certain religious practices in prison not mooted by his transfer to pre-parole status because "[e]ven as a parolee, circumstances may result in Mr. McKinney's reinstitutionalization. Thus, the acts of which he now complains are subject to reoccurrence, and the issues he raises are not moot."); cf. Green v. Bronson, 108 F.3d 1296 (10th Cir. 1997) (inmate-plaintiff's claims for injunctive relief mooted by his release from prison where there was no indication that plaintiff was still on parole or supervised release following release). Today, we hold that when an inmate's claim for prospective injunctive relief regarding conditions of confinement becomes moot due to the inmate-plaintiff's release from confinement, the inmate's parole or supervised release status does not, absent some exceptional showing, bring that claim under the narrow "capable of repetition, yet evading review" exception to the mootness doctrine.

While our holding comports with the teachings of Green and White, we are aware that McKinney, which involved a somewhat similar factual scenario to the present case, supports a different result. In McKinney, the appellant was a Sioux Indian seeking damages as well as injunctive relief to (1) "prohibit Oklahoma prison authorities from enforcing a prison grooming code against him," and (2) "require prison officials to return his medicine bag[] and to permit the

construction of a sweat lodge at the correctional facility." 952 F.2d at 351. The state claimed that McKinney's case was mooted by his release from prison and his status as a pre-parolee[2]. This court disagreed, holding that McKinney's injunctive claims as well as his damages claims survived his change in status from prisoner to pre-parolee, because "circumstances may result in Mr. McKinney's reinstitutionalization. Thus, the acts of which he now complains are subject to reoccurrence, and the issues he raises are not moot." Id. at 351.

We perceive some tension between McKinney and our subsequent cases of Green and White, and to the extent that there is a conflict, the en banc court now overrules McKinney and adopts the rule articulated in Green and White.[3]

---

[2]Nothing in McKinney indicates whether "pre-parole" status was equivalent to the "supervised release" status of McAlpine or whether it involved a greater degree of prison supervision or likelihood of reincarceration. However, four years after McKinney, we observed that "pre-parole" is a statutory program in Oklahoma which "releases qualified inmates into society on a conditional basis." Harper v. Young, 64 F.3d 563, 565 (10th Cir. 1995). Typical conditions include pre-parolee agreement to: random searches or visits from law enforcement officers; report to probation officer at frequent intervals; travel limitations and curfews; drug and alcohol prohibitions; random urine testing; maintain employment or enrollment in a full-time educational program. See id. at 565 n.5. In short, since 1995, this court has recognized that pre-parole is the functional equivalent of parole. See id. at 567.

[3]We have circulated this opinion to the entire court and have received the concurrence of all its active judges for our holding overruling McKinney to the extent that McKinney held that the pre-parole, parole, or supervised release status of a former inmate seeking injunctive relief relating only to prison conditions saves that claim from dismissal on mootness grounds.

A number of factors support departure from McKinney. First, under well-established Supreme Court and Tenth Circuit law, when a favorable decision will not afford plaintiff relief, and plaintiff's case is not capable of repetition yet evading review, we have no jurisdiction under Article III. The Tenth Circuit has said that "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot — i.e., where the controversy is no longer live and ongoing." Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1348 (10th Cir. 1994). A claim will be deemed moot unless a "'proper judicial resolution'" settles "'some dispute which affects the behavior of the defendant toward the plaintiff.'" Id. (quoting Hewitt v. Helms, 482 U.S. 755, 761 (1987)). Cox continued: "[T]his court has explained that a 'plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured [by the defendant] in the future.'" Id. at 1349 (quoting Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1991)) (alteration in original); see also City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.").

As the Supreme Court explained in O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974), "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." The O'Shea Court held that the chance that individuals would violate criminal statutes and be tried for their offenses was not "sufficiently real and immediate to show an existing controversy." Id. at 496. The Court concluded that it is to be assumed that "[plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction." Id. at 497.

Moreover, the narrow capable-of-repetition exception to the mootness doctrine applies only "where the following two circumstances [are] simultaneously present: '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" Spencer v. Kemna, 118 S.Ct. 978, 988 (1998) (alterations in original) (quotations and citations omitted). In a mootness issue similar to the one presented here, the Spencer Court held:

> Petitioner's case satisfies neither of these conditions. He has not shown (and we doubt that he could) that the time between parole revocation and expiration of sentence is always so short as to evade review. Nor has he demonstrated a reasonable likelihood that he will once again be paroled and have that parole revoked.

Id.  Finally, in Honig v. Doe, 484 U.S. 305, 320 (1988), the Court emphasized that "for purposes of assessing the likelihood that state authorities will reinflict a given injury, we generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury."  See also Murphy v. Hunt, 455 U.S. 478, 483-84 (1982) (no reason to believe that party challenging denial of pre-trial bail will once again be in a position to demand bail).

Applying these principles to McAlpine's case demonstrates why the hypothetical possibility that McAlpine, a former inmate on supervised release, will violate the terms of that supervised release and be returned to the same prison and same conditions of confinement cannot save an otherwise moot claim for prospective injunctive relief relating to prison conditions.  First, since McAlpine is currently on supervised release and no longer confined at El Reno, even a favorable ruling from this court could not in his present condition provide the prospective injunctive relief he seeks — i.e., an order compelling Warden Thompson to provide him with peyote and other Native American Church ceremonial items.  Second, McAlpine has failed to establish either of the two requirements necessary to qualify for the exception to mootness for cases capable of repetition, yet evading review:  Even (1) if McAlpine violates the conditions of his supervised release, and (2) if he has his supervised release revoked, and (3) if

he is reassigned to El Reno Prison Camp,[4] and (4) if Warden Thompson is still warden there, and (5) if Warden Thompson still denies McAlpine peyote, McAlpine has failed to demonstrate that there will be insufficient time in that event for him to obtain review in federal court of renewed First Amendment and RFRA claims to require the warden to provide him with peyote and other ceremonial religious items. As such, McAlpine's case is moot and it does not fall into the exceptional class of cases capable of repetition, yet evading review. We believe McAlpine's situation is typical, and thus we conclude that the controlling mootness cases counsel against McKinney.

---

[4]At oral argument, counsel for Warden Thompson informed this court that if McAlpine violated any conditions of his supervised release and was returned to incarceration it is unlikely that he would be returned to El Reno because that facility is an honor camp.

Second, other than (arguably) the Seventh Circuit,[5] our research indicates

that every circuit to consider the issue has decided that release to parole moots a

claim regarding <u>prison</u> conditions and regulations, as opposed to <u>parole</u>

<u>procedures</u> or conditions and regulations that affect <u>parole</u>.  See <u>Hickman v.</u>

<u>Missouri,</u> 144 F.3d 1141, 1141-43 (8th Cir. 1998) ("Because plaintiffs have been

---

[5]The Seventh Circuit has issued somewhat conflicting opinions on this issue.  In <u>Morales v. Schmidt</u>, 489 F.2d 1335 (7th Cir. 1974), the Seventh Circuit held that appellant's claim for an injunction prohibiting Wisconsin state officials from restricting correspondence between Morales and his wife's sister was not moot even though Morales achieved parole status after filing his suit because: (1) as a parolee, Morales was still in the custody of the Wisconsin correctional system and still subject to conditions imposed by the state, which admitted that it could and would continue to impose a restriction on communication between Morales and his sister-in-law even during his parole in the absence of a court order; and (2) "there is always the possibility that Morales during his period of parole will violate the terms of his conditional release and thus be returned to prison."  <u>Id.</u> at 1336.  The <u>Morales</u> court focused most of its discussion of the mootness issue on the former reason.  In <u>Morales,</u> unlike the present case, the restriction complained of would have directly affected Morales' then-current parole status. By contrast, here, since McAlpine is no longer incarcerated at El Reno, no order from this court could presently provide McAlpine with the relief sought, i.e., an order enjoining Warden Thompson to provide McAlpine with peyote and other ceremonial items.  Warden Thompson presently has no custody over McAlpine.  Thus, to the extent that <u>Morales</u> additionally referenced the possibility of the parolee being reincarcerated, that rationale was necessarily subsumed in the more immediate relief Morales sought.  Seventh Circuit opinions since <u>Morales</u> have held that inmate claims against prison officials for prospective injunctive relief are mooted by the inmate's transfer to another facility in the absence of a demonstration of the likelihood of retransfer (which may not be based on "mere speculation.").  See <u>Higgason v. Farley</u>, 83 F.3d 807, 811 (7th Cir. 1995); <u>see also</u> <u>Knox v. McGinnis</u>, 998 F.2d 1405, 1412-15 (7th Cir. 1993) (prisoner failed to establish "real and immediate" threat of being returned to segregation unit, and hence his suit complaining of segregation practices is moot.).

released on parole and are no longer confined at WMCC, their claims [for equitable relief] are moot." (citing Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (ordinarily claim "to improve prison conditions is moot if [plaintiff is no longer subject to those conditions]")); Black v. Parke, 4 F.3d 442, 444 n.2 (6th Cir. 1993) ("Black was paroled. Therefore, his request for preliminary and permanent injunctive relief is moot."); Dorman v. Thornburgh, 955 F.2d 57, 58 (D.C. Cir. 1992) ("Dorman has been paroled since noting this appeal. Consequently, his plea for injunctive relief is now moot."); Gillespie v. Crawford, 858 F.2d 1101, 1103 (5th Cir. 1988) (en banc) ("Gillespie too has now been paroled and his claims for equitable and declaratory relief for himself have become moot."); Garcia v. De Batista, 642 F.2d 11, 12 (1st Cir. 1981) ("Plaintiff's prayer for injunctive relief became moot when he was released on parole."); Winsett v. McGinnes, 617 F.2d 996, 1003 (3d Cir. 1980) (en banc) ("Winsett's demand for injunctive relief is now moot. . . . Because Winsett has now received a conditional parole, is no longer subject to Delaware's jurisdiction, and shows no interest in returning . . . ."); see also Freeman v. Johnson, No. 91-7194, 1992 WL 90276, at **1 (4th Cir. May 4, 1992) (unpublished disposition) ("Where a party seeks solely equitable relief concerning prison conditions or regulations, and is subsequently paroled, the claims are moot."); McKinnon v. Talladega County, Ala., 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule

is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief.").

Third, and related to the O'Shea Court's assumption that citizens "will conduct their activities within the law and so avoid prosecution and conviction," we are not inclined to speculate that McAlpine will break the law or otherwise violate the conditions of their release agreement. See Knox, 998 F.3d at 1413 ("Presumably, Knox would be returned to segregation [and the conditions he sued to remedy] only if he were to violate a prison rule, such as the one prohibiting the possession of dangerous contraband. Although that may be a very real possibility given that contraband was found in Knox' cell twice in four years, we must assume that Knox will abide by prison rules and thereby avoid a return to segregation status.") Such speculation would undermine the presumption of innocence in our criminal justice system, and the rehabilitative focus of the parole system.

Applying traditional principles of the mootness doctrine, we hold that McAlpine's case is moot.

## CONCLUSION

We VACATE the district court's order and REMAND with instructions that the district court DISMISS this case as moot.