Rebecca S. BOOTH and Stephen S. Effertz, on behalf of similarly situated persons, Plaintiffs,

v.

BARTON COUNTY, Kansas, Defendant.

No. 00–1169–JTM.

United States District Court, D. Kansas.

July 18, 2001.

MEMORANDUM AND ORDER

MARTEN, District Judge.

This matter comes before the court on defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. The motion is fully briefed and ripe for determination. For the reasons set forth below, the court grants defendant's motion.

## I. Factual Background

While this case has undergone several transformations, only two plaintiffs remain: Rebecca Booth and Stephen Effertz. Plaintiffs bring this action for injunctive relief, pursuant to 42 U.S.C. § 1983, alleging unconstitutional conditions of confinement in the Barton County jail. Plaintiffs contend that Barton County has a policy of housing up to 72 inmates in a facility allegedly designed to accommodate only 19 and that this policy resulted in violations of plaintiffs' constitutional rights. Specifically, Effertz alleges that his fellow inmates beat him on October 3, 1999 and that defendant exercised deliberate indifference in failing to prevent the attack. After being hospitalized from the beating, Effertz alleges that defendant placed him in a two-man cell with ten other prisoners for a period of one week. Effertz further asserts that the alleged overcrowding violates the Eighth Amendment's prohibition on cruel and unusual punishment. Finally, Effertz alleges that the attack led to the growth of a disfiguring fatty tumor on his forehead and that defendant was deliberately indifferent to his serious medical need for the tumor's removal. Plaintiff Booth alleges that defendant denies women inmates equal access to out of cell exercise time as compared to the time allotted male inmates and that this amounts to a denial of equal protection.

### A. Rebecca Booth

The pretrial order in this matter indicates that Booth's sole claim is "that women inmates are denied equal access to out of cell exercise as that of male inmates." Pretrial Order, ¶ 8(a), 9(a). However, in plaintiffs' response to the present motion, Booth claims that defendant engages in unequal use of leg irons on female inmates and that defendant failed to provide her medical care in that it failed to pay her share of medical expenses arising from a child delivery that occurred on March 19, 2001. Defendant argues that the court should exclude these additional claims because plaintiffs did not timely raise them.

At the time of her deposition on August 31, 2000, Booth stated that she had been in the Barton County jail a number of times, but that the longest period of incarceration lasted six days. Booth Deposition, at 10–12. Booth points out, however, that on March 5, 2001, her probation was revoked and she was incarcerated for a period that she anticipates will end November 18, 2001. Booth Affidavit, at 14–16. At her deposition, Booth testified that during the incarceration periods prior to August 31, 2000, the defendant did not allow any of the female inmates outside for exercise.

Booth Deposition, at 48. She also stated that she could not see whether jailers allowed male prisoners outside exercise time. *Id.* When asked about making the assertion that males received more exercise time than females, Booth stated that her attorney had likely misunderstood the claim. *Id.* In response, Booth attempts to explain these statements through affidavit testimony, which states:

> During my incarcerations, a lack of female guards results in woman inmates being granted less outside of cell exercise than male inmates. The custom of having a female guard present when female inmates are booked into jail or otherwise supervised outside the cell limits exercise outside the cell... I cannot view the male inmates from the female cell. My knowledge on the outside exercise afford[ed] male inmates during my incarcerations is based upon hearsay... No female inmates have been given the opportunity to become a jail trustee. The male trustees are allowed greater freedom and outside exercise than all other inmates.

Booth Affidavit, at 1–2. Booth argues that the more specific reference to the allegedly male only trustee policy clarifies her deposition statements.

### B. Stephen Effertz

It is undisputed that on May 16, 2001 Barton County released Effertz from the jail. Nixon Affidavit, at 1. Effertz argues, however, that there is a reasonable expectation that he will be incarcerated there in the future. On October 3, 1999, several inmates attacked Effertz. During his deposition, Effertz stated that the attack was "because of a girl." Effertz Deposition, at 26. Effertz seeks to controvert the stated cause of the attack by suggesting that he expects Detective Rick Popp to provide testimony that Effertz was rumored to be cooperating with law enforcement. Plaintiffs did not depose Popp and he did not provide any affidavit testimony. During his deposition, Effertz went on to state that he didn't have any idea the attack was coming. *Id.* at 26–27. He further states that the Barton County Sheriff's Office had no reason to expect the attack. *Id.* at 27. In fact, Effertz specifically testified that Barton County jailers look out for the safety of the inmates and attempt to avoid fights by giving due consideration to which prisoners are placed in the same cell areas. *Id.* To conclude this line of testimony, Effertz emphatically states: "if they're concerned for your safety, they're not going to put you back there. They're just not going to ... They take people out." *Id.* at 73. It is uncontested that shortly before the attack, Effertz requested that the jailers move him into general population. *Id.* at 22. Prior to placing Effertz in general population, officer Cindy Carson asked him if he had any safety concerns. Effertz expressed no safety concerns regarding his placement into general population. Finally, Effertz indicates that jailers responded quickly to the attack and got him to medical treatment and that jailers have took precautions for his safety upon his return to the jail. *Id.* at 28, 83.

Effertz claims that defendant's agents were deliberately indifferent to his medical needs relating to the removal of a fatty tumor from his forehead. There is some dispute as to the cause of the tumor. Effertz asserts that the tumor was a direct result of the attack described above, while defendant claims that Effertz has had the tumor since high school. Effertz testified that, after his release, he could not afford to see a doctor to have the tumor removed and, in fact, did not have the tumor removed until he was later incarcerated in Ellis County, Kansas. Effertz Deposition, at 46. James Daily, who was the Barton County sheriff at all time relevant to plaintiffs' claim, states that neither Effertz nor any medical personnel ever advised the

Sheriff's Department that the fatty tumor needed to be removed or that such a removal constituted a serious medical need. Daily Affidavit, at 1. However, Effertz points out that the hospital discharge orders from his care following the October 3 attack called for his return to the hospital to have several stitches removed. The jailers failed to return him to the hospital and Effertz removed the stitches himself. Effertz Affidavit, at 2,3.

Effertz's final claim relates to overcrowding. When he first came to Barton County, jailers placed him in a one man cell by himself. Upon requesting jailers to move him into general population, Effertz was placed in a holding cell with two cell mates. He remained in the holding cell for approximately one hour. After suffering the beating and returning from the hospital, Effertz was again placed in a one man cell by himself. After a short time in the solitary cell, Effertz was placed in a two-bed cell, which is where he claims the overcrowding occurred. Effertz stated, in his deposition, that he was in the cell for approximately one week. Effertz Deposition, at 30. He estimates that there were up to eleven inmates in the cell at some point during that week. Effertz Affidavit, at 1–2. In his affidavit, Effertz claims to know with specificity that the number of inmates in the cell reached eleven. However, at his deposition, he stated that he could not honestly remember either the maximum or minimum number of inmates in the cell during that week, but estimated the maximum to be twelve. Effertz Deposition, at 31. He was certain that the number of inmates in the cell fluctuated during the week in question. Defendant relies on inmate housing reports which indicate that Effertz was in the two-man cell for only two days and that he was kept in the cell with six other inmates. Effertz asserts that Sheriff Daily's deposition testimony suggests that the reports are unreliable. However, the cited testimony suggests that, while the jail does not retain many of the records, those which it retains are accurate. Daily Affidavit, at 2. The remainder of the facts presented in this case relate to defendant's claims that it has policies against unequal treatment of prisoners based on gender, against denial of necessary medical treatment, against overcrowding, and a policy to protect all prisoners from violence. Plaintiffs respond that such policies are irrelevant in view of the alleged overall policy of keeping more prisoners in the Barton County jail than the premises can reasonably hold.

## II. Summary Judgment Standards

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10th Cir. 1998). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Baker v. Board of Regents*, 991 F.2d 628, 630 (10th Cir.1993). The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations. *Anderson v.. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. Analysis and Discussion

■ The court will first address Effertz' claims. As noted above, all of Effertz' claims seek purely injunctive relief relating to the conditions of confinement at Barton County jail. The record before the court, however, indicates that officials have released him from Barton County jail. Therefore, his claims are moot. "Since he is no longer a prisoner within the control of the [defendant], the entry of a declaratory judgment in [Effertz'] favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendant['s] behavior towards him." *Green v. Branson,* 108 F.3d 1296, 1300 (10th Cir.1997). Moreover, the entry of injunctive relief in Effertz' favor would have no effect on the defendant's behavior. *Green,* 108 F.3d at 1300; *see also White v. State,* 82 F.3d 364, 366 (10th Cir.1996) (holding that inmate's claims for injunctive relief were mooted by his release from incarceration).

■ Effertz' claims are moot even though he argues a parole violation will likely return him to the Barton County jail. The Tenth Circuit has held that "when an inmate's claim for prospective injunctive relief regarding conditions of confinement becomes moot due to the inmate-plaintiff's release from confinement, the inmate's parole or supervised release status does not, absent some exceptional showing, bring that claim under the narrow 'capable of repetition, yet evading review' exception to the mootness doctrine." *McAlpine v. Thompson,* 187 F.3d 1213, 1215 (10th Cir.1999). The court further explained that "the narrow capable-of-repetition exception to the mootness doctrine applies only 'where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Id.* at 1216 (quoting *Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 988, 140 L.Ed.2d 43 (1998)). In a case with similar mootness issues as the ones presented here, the Supreme Court held:

> Petitioner's case satisfies neither of these conditions. He has not shown (and we doubt that he could) that the time between parole revocation and expiration of sentence is always so short as to evade review. Nor has he demonstrated a reasonable likelihood that he will once again be paroled and have that parole revoked.

*Spencer,* 523 U.S. at 18, 118 S.Ct. 978. Likewise, Effertz has failed to show that the time between his possible probation revocation and expiration of his sentence is so short as to evade review. *See McAlpine,* 187 F.3d at 1217 (finding that inmate failed to demonstrate that there would be insufficient time to review his First Amendment complaints if he was returned to prison for a parole violation). Further, he has not shown that there is a reasonable likelihood that he will have his probation revoked. The court assumes Effertz will conduct his activities within the law. *Id.* at 1218. Therefore, it is not inclined to speculate that he will break the law or otherwise violate the conditions of his probation. "Such speculation would undermine the presumption of innocence in our

criminal justice system, and the rehabilitative focus of the [probation] system." *Id.* Because his release from Barton County jail moots his claims for injunctive relief, the court grants defendant's motion for summary judgment as to all of Effertz' claims.[1]

■ Plaintiff Booth's claim likewise fails.[2] She asks the court to enjoin defendant from violating the equal protection prohibition against unequal treatment of men and women at the Barton County jail. Specifically, she alleges that male inmates receive more outside exercise time than female. She claims that the cause of the unequal treatment is that, due to its policy of overcrowding, the jail does not have sufficient female guards to provide equal exercise time. Booth also introduces the issue of male only "trustees," and claims that such a policy leads to more exercise time for males. Because Booth failed to raise this factual claim in her complaint and failed to introduce the issue at the pretrial conference, the court prohibits her from now introducing the issue at the summary judgment stage. Fed.R.Civ.P. 16(e). The court finds that prohibiting the introduction of new issues and factual claims at this stage of the proceeding is not manifestly unjust. Booth's claim of unequal treatment remains, but she cannot continue to introduce new factual bases on which to rest her allegations.

■ As to her claim of unequal treatment, Booth has failed to show that any material issue remains for trial. " 'To establish a gender-based claim under the Equal Protection Clause, [plaintiff] must, as a threshold matter, demonstrate that [she has] been treated differently by a state actor than others who are similarly situated simply because [plaintiff] belong[s] to a particular class.' " *Marsh v. Newton,* 134 F.3d 383 (10th Cir.1998) (citing *Keevan v. Smith,* 100 F.3d 644, 647–48 (8th Cir.1996)). Booth's general allegations that male inmates receive more exercise time than female inmates are insufficient to survive summary judgment. Specifically, Booth has not come forward with sufficient facts to raise a triable issue as to whether female inmates are, in fact, treated differently. During her deposition, Booth stated that her unequal treatment claim likely resulted from a misunderstanding with her attorney. Nonetheless, in response to defendant's summary judgment motion, Booth attempts to save her claim by averring that "woman inmates [are] granted less outside of cell exercise than male inmates." Booth Affidavit, at 1. However, she further avers that she "cannot view the male inmates from the female cell. My knowledge of the outside exercise afford male inmates during my incarcerations is based upon hearsay." *Id.* at 1–2. Finally, Booth alleges the existence of a female jailer who will verify

---

1. The court notes that Effertz requests reimbursement of $246.70 for medical expenses which the Barton County jail did not pay and which were incurred during his stay at Barton County. The claim was not raised at the pretrial conference and was not included in the pretrial order. Fed.R.Civ.P. 16(e) states that the pretrial order "controls the subsequent course of litigation." Rule 16 further states that the pretrial order "shall be modified only to prevent manifest injustice." *Id.* The court finds that Effertz has not established that he will suffer manifest injustice if

not allowed to add the new claim. It thus denies the claim as not properly before the court.

2. For the same reason set forth in footnote 1, the court will only consider Booth's claim of unequal treatment regarding outside exercise privileges. Booth's claims relating to unreimbursed medical expenses is not properly before the court as she failed to timely raise the issue. Her claim of unequal use of leg irons is likewise not properly before the court.

her claims, but fails to present any testimony from that jailer.

Rule 56(e) allows a party to survive summary judgment by producing an affidavit, but only when that affidavit "set[s] forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "Conclusory allegations do not establish an issue of fact under Rule 56" *Bruce v. Martin–Marietta Corp.*, 544 F.2d 442, 445 (10th Cir.1976). Here, Booth makes only conclusory allegations of unequal treatment and does not set forth any specific facts showing a genuine issue for trial. Booth self-professedly relies on hearsay and the anticipated testimony of a third-party witness, which is itself hearsay if not purely speculative. At the summary judgment stage, affidavits must "set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). As the Tenth Circuit has plainly stated, "hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'" *Thomas v. International Business Machines*, 48 F.3d 478, 485 (10th Cir.1995). Because plaintiff Booth has not brought forth any admissible evidence establishing differing treatment between male and female inmates, the court grants defendant's motion for summary judgment as to her claims.

■ As a final matter, plaintiffs' counsel requests attorney fees. Counsel alleges that plaintiffs are the "prevailing party" in this action because the Barton County jail has voluntarily improved inmate conditions in response to the present litigation. Pursuant to 42 U.S.C. § 1988, plaintiffs thus argue they are entitled to attorney fees. Beyond the paucity of factual support for the allegations of voluntary change or, in fact, any change at all, the definition of "prevailing party" does not include a party who achieves a desired result through defendant's voluntary change. Courts often refer to plaintiffs' argument as the "catalyst theory." Until very recently, there was some dispute among various circuits as to whether the "catalyst theory" would support a "prevailing party" finding. The court need not explore those divisions further, as the Supreme Court has, on May 29, 2001, specifically held that achieving a desired result through a voluntary change instead of by judicial mandate does not afford plaintiffs "prevailing party" status for the purpose of federal attorney fee statutes. *See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 531 U.S. 1004, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). In view of *Buckhannon,* the court denies plaintiffs' request for fees.

IT IS THEREFORE ORDERED this ____ day of July, 2001 that defendant's motion for summary judgment (dkt. no. 87) is granted and the case is dismissed.