**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 19, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

ERIC KING,

     Petitioner - Appellant,

v.

ANDREW CIOLLI, Warden, Florence
FCC and ADX, United States Bureau of
Prisons,

     Defendant - Appellee.

No. 23-1201
(D.C. No. 1:23-CV-00519-CNS)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, Chief Judge, **BALDOCK**, and **MATHESON**, Circuit Judges.
_____

Petitioner-Appellant Eric King appeals from the denial of his 28 U.S.C. § 2241 petition for a writ of habeas corpus. We conclude that Mr. King's release from prison during the pendency of this appeal has mooted his petition. Accordingly, we **vacate** the district court's judgment, **remand** with instructions to dismiss the petition as moot, and **dismiss** this appeal.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1(a) and Tenth Circuit Rule 32.1(A).

**I**

**A**

Mr. King was convicted of using explosive materials to commit arson in the Western District of Missouri in 2016. He received a sentence of ten years' imprisonment, with three years of supervised release to follow. Throughout his imprisonment, Mr. King was housed at a variety of facilities. In 2022, he was transferred to the Administrative Maximum Facility ("ADX") in Florence, Colorado.

On February 27, 2023, while in custody at the ADX, Mr. King filed a habeas petition pursuant to 28 U.S.C. § 2241, and a motion for a temporary restraining order ("TRO") and hearing in the District of Colorado. In the habeas petition, Mr. King asserted four grounds for relief, arguing that:

(1) [his sentence was] unlawfully prolonged . . . based on arbitrary and capricious disciplinary proceedings lacking in Due Process and depriving him of good time credit[,]

(2) [he was] serving this unlawfully prolonged sentence at the ADX based on a bias motivated and secretive ADX placement process devoid of Due Process[,]

(3) [t]he Bureau of Prisons . . . unlawfully prolonged this cruel and unusual sentence based in part on over sixteen hundred (1600) days of designation in segregated housing without meaningful review or opportunity to be heard in violation of federal law, preventing Mr. King's ability to earn good time credit, also causing Mr. King an unlawfully prolonged Sentence[, and]

(4) [he was] serving an unnecessarily prolonged sentence at the ADX where he [wa]s unable to access prerelease programs pursuant to what appears to be an unreviewable Ultra Vires Special Administrative Measure (SAM) policy and process enacted in violation of the Administrative Procedure Act ("APA") and contrary to the judicial review power of the courts.

2

Aplt.'s App., Vol. I, at 6–7 (Pet. for Writ Habeas Corpus, filed Feb. 27, 2023).  In his

TRO motion, Mr. King requested that the court enjoin the Bureau of Prisons ("BOP") and

the ADX warden from:

(1) [h]ousing Mr. King at the ADX on an unlawfully prolonged sentence,

(2) [t]ransferring Mr. King out of [the] Court's jurisdiction,

(3) [e]ndangering Mr. King through manipulation of his housing placement,

(4) [i]mposing arbitrary and unnecessary special conditions on Mr. King's release, and

(5) [i]nterfering with [the] exercise of Mr. King's rights, to include his right to counsel and to seek relief in the courts.

Aplt.'s App., Vol. II, at 335 (Pl.'s Emergency Mot. for a TRO & Req. for Hr'g, filed Feb.

27, 2023).  Mr. King also "move[d] th[e] . . . Court to convene an emergency hearing on

th[e] injunction [request]."  *Id.* at 355.

On April 13, 2023, the district court denied Mr. King's motion for a TRO on the

basis that Mr. King had failed to exhaust his administrative remedies.  On May 5, 2023,

Mr. King filed an unopposed motion, "request[ing] that the Court clarify whether or not

the Court intended the Order . . . to be a final order with respect to the underlying petition

seeking a writ of Habeas Corpus."  Aplt.'s App., Vol. III, at 768 (Pet'r's Unopposed Mot.

to Clarify April 13, 2023 Order, filed May 5, 2023).  The district court issued a clarifying

order on May 10, 2023, confirming that the April 13 order was intended to be a final

order with respect to the underlying habeas petition, and formally denied Mr. King's habeas petition for the same reason it denied the TRO motion. Mr. King timely appealed.

**B**

On January 12, 2024, Mr. King filed his custody status questionnaire with this Court and indicated that his custody status was "Conditional release; Subject of this appeal 2241 habeas regarding the execution of Mr. King's sentence." Custody Status Questionnaire, No. 23-1201, at 1 (10th Cir., filed Jan. 12, 2024). Further, both parties' briefing on the merits noted that Mr. King's expected release date was February 23, 2024. *See* Aplt.'s Opening Br. at 16; Aplee.'s Resp. Br. at 5.

On February 26, 2024, this Court ordered supplemental briefing on whether Mr. King's appeal was moot in light of his release from custody on February 23, 2024. *See* Order, No. 23-1201, at 1 (10th Cir., filed Feb. 26, 2024). Both parties submitted their supplemental briefing on March 4, 2024. *See* Aplt.'s Suppl. Br. at 10; Aplee.'s Suppl. Br. at 3. The government asserts that Mr. King's release from prison has mooted his appeal. *See* Aplee.'s Suppl. Br. at 1. However, Mr. King asserts "that this matter is not moot." Aplt.'s Suppl. Br. at 1.

**II**

The federal writ of habeas corpus "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3). Although Mr. King is no longer in prison, the "in custody" requirement of § 2241 is satisfied because he filed his habeas application while he was incarcerated. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Riley v. INS*, 310 F.3d 1253, 1256 (10th Cir.

4

2002).  "The more substantial question, however, is whether [Mr. King's] subsequent release cause[s] the petition to be moot because it no longer present[s] a case or controversy under Article III, § 2, of the Constitution."  *Spencer*, 523 U.S. at 7.

This Court has held that "[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."  *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (quoting *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005)).  "This requirement exists at all stages of federal judicial proceedings, and it is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome."  *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996).  Because "a federal court has no authority 'to give opinions upon moot questions,' . . . if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief,' . . . the appeal must be dismissed."  *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).  Stated otherwise, "[a]n issue becomes moot when it becomes impossible for the court to grant 'any effectual relief whatsoever' on that issue to a prevailing party."  *United States v. Hahn*, 359 F.3d 1315, 1323 (10th Cir. 2004) (en banc) (quoting *Smith v. Plati*, 258 F.3d 1167, 1179 (10th Cir. 2001)).

When a prisoner has been released from custody while his or her habeas petition is pending, a court's jurisdiction depends upon the existence of "collateral consequences [of the conviction] adequate to meet Article III's injury-in-fact requirement."  *Spencer*, 523 U.S. at 14.  In other words, the petitioner must demonstrate "some concrete and

5

continuing injury." *Id.* at 7; *see, e.g.*, *Carafas v. LaVallee*, 391 U.S. 234, 237–38 (1968) (holding that the defendant's inability to engage in certain businesses, serve as an official of a labor union, vote in an election, and serve as a juror due to his conviction defeated the mootness challenge to his appeal). This is because "[w]e will not dismiss a petition as moot if '(1) secondary or "collateral" injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.'" *Riley*, 310 F.3d at 1257 (quoting *Chong v. Dist. Dir., INS*, 264 F.3d 378, 384 (3d Cir. 2001)). Ultimately, we ask "whether granting a present determination of the issues offered will have some effect in the real world." *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quoting *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005)); *see Jordan v. Sosa*, 654 F.3d 1012, 1029 (10th Cir. 2011).

## III

Mr. King argues in his supplemental brief that this appeal is not moot because the facts of his case are capable of repetition yet evade review, and because the facts attendant to his case represent a concrete injury. *See* Aplt.'s Suppl. Br. at 7–10. For the following reasons, we disagree and find that Mr. King's release has mooted this appeal.

## A

Mr. King contends that the facts of this case are capable of repetition yet evade review because, "[e]ven though Mr. King sought release and has been released, the injurious administrative maximum prison placement, procedures, and unconstitutional

6

assumption of administrative authority contrary to BOP duties as assigned by Congress persist, as does King's possible return to the Bureau's custody during the thirty-six-month period of Supervised Release." *Id.* at 8. But this argument concerning the BOP's allegedly injurious classification policy fails because, even if Mr. King's assertions were correct, he has not demonstrated that those factual circumstances—*viz.*, the BOP's allegedly unlawful conduct in classifying him for placement in the ADX—are capable of being repeated as it relates to *him*.

"A dispute qualifies for [the capable of repetition, yet evading review] exception only 'if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, *and* (2) there is a reasonable expectation *that the same complaining party* will be subjected to the same action again.'" *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (emphases added) (quoting *Turner v. Rogers*, 564 U.S. 431, 439–40 (2011)). Here, even if "the injurious administrative maximum prison placement, procedures, and unconstitutional assumption of administrative authority contrary to BOP duties as assigned by Congress persist," Aplt.'s Suppl. Br. at 8, Mr. King has not shown that the alleged illegality persists as to *him* or that there is a reasonable expectation that *he* will be subjected again to the same allegedly unlawful conduct by ADX.

Moreover, in making his unlawful classification argument, Mr. King hints at his "possible return to the Bureau's custody during the thirty-six-month period of Supervised Release," *id.*; however, his own explication of the relevant legal principles reveals that such a hint is based on no more than speculation and is a legal non-starter, *see id.* at 7

7

("Generally, possible future potential violations of parole or supervised release are too speculative for a court to retain jurisdiction and that such speculation would undermine the presumption of innocence in our criminal justice system, and the rehabilitative focus of the parole system." (citing *McAlpine v. Thompson*, 187 F.3d 1213 (10th Cir. 1999))).

As we have stated, we "assum[e] that citizens 'will conduct their activities within the law and so avoid prosecution and conviction.'" *McAlpine*, 187 F.3d at 1218 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)). Therefore, "we are not inclined to speculate that [petitioners] will break the law or otherwise violate the conditions of their release agreement." *Id.* (citation omitted). "Such speculation would undermine the presumption of innocence in our criminal justice system, and the rehabilitative focus of the parole system." *Id.*; *see also Ind v. Colo. Dep't of Corrs.*, 801 F.3d 1209, 1215 (10th Cir. 2015) ("Given these circumstances and our precedent, we will not assume Mr. Ind will commit future violations that will land him in administrative segregation once again.").[1]

---

[1]     To the extent that Mr. King is also arguing against mootness by asserting that the BOP voluntarily stopped its allegedly illegal treatment by "strategic[ally] releas[ing]" him, Aplt.'s Suppl. Br. at 8, he would be, in effect, making a voluntary cessation argument, *see Riley*, 310 F.3d at 1257 ("We will not dismiss a petition as moot if . . . 'the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time . . . .'" (quoting *Chong*, 264 F.3d at 384)). But such an argument would not be persuasive because it is belied by the record. In his initial habeas petition filed in February 2023, Mr. King indicated that his then-projected release date was February 23, 2024. *See* Aplt.'s App., Vol. I, at 8. And he was indeed released on February 23, 2024. *See* Aplt.'s Suppl. Br. at 1; Aplee.'s Suppl. Br. at 2. Therefore, Mr. King has not offered any evidence that this judicial proceeding had any impact on the timing of his release to supervised release.

Therefore, Mr. King's appeal does not fall under the "capable of repetition, yet evading review" exception to our mootness doctrine.

**B**

Mr. King also contends that the facts of this case reveal a concrete injury in the form of collateral consequences. *See* Aplt.'s Suppl. Br. at 8. In this regard, Mr. King states that this "matter is not moot because he faces potential continuing collateral consequences as he remains under the custody and control of *the BOP* by way of supervised release and therefore subject to a harmful classification by BOP." *Id.* (emphasis added).

This is incorrect because while on supervised release, Mr. King is under the control of the court, not the BOP. *See United States v. Mike*, 596 F. App'x 692, 695 (10th Cir. 2014) ("The Supreme Court has counseled us that an individual on supervised release is not in the BOP's custody." (citing *United States v. Johnson*, 529 U.S. 53, 57 (2000)));[2] 18 U.S.C. § 3583 ("The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment . . . ."); *cf. United States v. Foster*, 754 F.3d 1186, 1191 n.3 (10th Cir. 2014) ("The question is not whether Foster was in the BOP's custody but rather whether he was in custody by virtue of the district court's order. Nor is the question whether all

---

[2]     We cite to unpublished cases only for their persuasive value and do not treat them as binding authority. *See United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022).

defendants on supervised release are in custody regardless of the terms of their release, but rather whether Foster was in custody because of the residence requirement in the district court's order."). Therefore, any relief directed at the BOP—more specifically, at the ADX warden—would have no "effect in the real world" as it relates to Mr. King, who is no longer behind prison walls but, rather, on supervised release. *Rio Grande Silvery Minnow*, 601 F.3d at 1111–12.

To be sure, Mr. King states that the ADX classification has collateral, harmful effects on him by adversely impacting the conditions of his supervised release. *See* Aplt.'s Suppl. Br. at 9 ("Mr. King's current supervision and the conditions upon him are a direct result of the wrongful security classifications and Special Administrative Measures imposed by the Bureau of Prisons."); *id.* at 2 ("Mr. King alleges that these conditions are a direct and proximate result of the wrongful security classification and misapplication of Special Administrative Measures underlying the original habeas petition."). But the portions of the record that Mr. King cites—involving correspondence from the District of Colorado's Probation Office—do not support his contention that his current supervised release conditions are the result of the security classification that the BOP imposed on him. *See* Aplt.'s Suppl. Br. at 2 (citing Aplt.'s App., Vol. II, at 358–59 (Prerelease Investigation Denial, filed Feb. 27, 2023)). Moreover, Mr. King does nothing further to develop this argument, and it is his burden to do so. *See Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011) ("Where an appellant fails to lead, we have no duty to follow. It is the appellant's burden, not ours, to conjure up possible theories to invoke our legal authority to hear her appeal.").

Furthermore, on its face, this argument seems dubious in light of the fact that supervised release is the domain of the court, not the BOP. Therefore, in a suit against the warden of the ADX, it is hard to see what relief that Mr. King could get that would impact his conditions of supervised release. Indeed, in his supplemental briefing, Mr. King seems to recognize as much. *See* Aplt.'s Suppl. Br. at 4 ("[T]he Tenth Circuit has previously recognized that any modification of supervised release term was 'wholly within the discretion of the sentencing court' and therefore lacking injury for the purpose of the mootness analysis." (quoting *United States v. Fields*, 823 F. App'x 587, 590 (2020))). As such, "there is nothing for us to remedy, even if we were disposed to do so." *Spencer*, 523 U.S. at 18.

Therefore, Mr. King has not shown that he is subject to a "concrete and continuing injury" as a "collateral consequence" of his ADX classification adequate to meet Article III's injury-in-fact requirement. *Id.* at 7.[3]

---

[3]     Indeed, Mr. King's appeal may have been moot when he was transferred from the ADX to a halfway house in Phoenix, Arizona, on December 11, 2023, prior to his release to supervised release. That is, Mr. King's habeas action was directed *solely* toward the warden of the ADX. *See* Aplt.'s App., Vol. I, at 9 ("Warden Andrew Ciolli is the Warden of the Florence Correctional Complex. In this role Warden Ciolli oversees the entire Florence Correctional Complex, including the Florence prison camp, FCI Florence, USP Florence, and Florence ADX."). We have held that, when a petitioner challenges, through claims seeking prospective relief, their confinement in the ADX, *any* transfer out of the ADX—and not just the expiration of their ultimate sentence—moots the challenge. *See Boyce v. Ashcroft*, 268 F.3d 953, 954 (10th Cir. 2001) (per curiam) ("Boyce states that the Bureau of Prisons transferred him from ADX Florence, Colorado to FCI Sheridan, Oregon on May 31, 2001. He points out that the transfer is precisely the relief which his petition requested, and he contends that the published opinion is therefore moot. . . . The court agrees that the case became moot when the BOP transferred petitioner to FCI Sheridan."). Therefore, any relief at this point that is directed to the ADX warden could not possibly have any effect in the real world. *See Jordan*, 654 F.3d

\* \* \*

Thus, Mr. King's appeal has been rendered moot by his release from prison on February 23, 2024.

## IV

For the foregoing reasons, we **VACATE** the district court's judgment, **REMAND** with instructions to dismiss without prejudice the underlying case as moot, and **DISMISS** this appeal.

Entered for the Court

Jerome A. Holmes
Chief Judge

---

at 1029–30 ("[T]here is a critical flaw in Mr. Jordan's argument: he has never sought relief on a system-wide basis against the BOP in this case.  Instead of suing the BOP or its director, he has pursued injunctive and declaratory relief only with respect to individual BOP officials at specific penal institutions—most notably, the Inmate Systems Manager and the Warden at the ADX in Florence, Colorado, where Mr. Jordan was incarcerated at the time that he commenced his lawsuit. . . .  Therefore, Mr. Jordan has not sued defendants who are actually situated to effectuate any prospective relief that this court might afford him.").