Donald Ray STANLEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–18052.

Court of Criminal Appeals of Oklahoma.

July 18, 1973.

**830**

Joe B. McMillin, Jr., Weatherford, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., John C. Williams, Legal Intern, for appellee.

OPINION

BLISS, Presiding Judge:

In the District Court of Custer County, Case No. CRF–72–46, appellant, Donald Ray Stanley, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Burglary in the Second Degree, After Former Conviction of a Felony. His punishment was fixed at fifteen (15) years imprisonment. From that judgment and sentence he has perfected a timely appeal to this Court.

At the trial Patrolman Alvin Williams, of the Clinton City Police Department, testified on April 15, 1972, he and James Brown were patrolling a designated area within the city of Clinton. At approximately 12:45 a.m. he and Brown, patrolling the south alley at North Street, observed a six foot, one hundred and seventy pound male running in an easterly direction in the alleyway. They gained pursuit, observing this person cross Sixth Street in front of a store adjacent to the T. H. Rogers Lumber Yard. Officer Williams radioed the station and then entered the lumber storage area.

Officer Jerry Cain testified that in response to a radio call, he drove to the T. H. Rogers Lumber Yard, during the early morning hours of the above mentioned date. Cain stated that after his arrival and entry into the yard, he and Williams searched the area. After approximately ten to fifteen minutes, Cain found a person later identified as Bill Sibole huddled in an inconspicuous place inside the lumber storage area. Cain moved Sibole to a better lighted area and confined him with handcuffs. Cain then returned to retrieve gloves he had observed near Sibole. Upon his return, he observed defendant and Jimmy Caudel hiding near that same spot. Thereafter, defendant and Caudel were taken into custody. Cain further stated that at the time of the arrest, defendant had in his possession a walkie-talkie, State's Exhibit 3, strapped on his person inside of his coat. Approximately twenty to thirty feet from the point where the trio was apprehended, a bound zipper bag containing items marked as State's Exhibit 1A–1H was found. Those items were more specifically a six pound sledge hammer, a bar, two screwdrivers, two crowbars, a brace and bit, and a red flashlight.

Mark McClendon, Clinton City Police Officer, testified he was dispatched to the lumber yard on the previously mentioned evening. He entered to assist Williams and Cain in affecting defendant's arrest. McClendon stated he found State's Exhibit

4, a walkie-talkie, hidden behind some wallboard north of the north drive inside of the lumber yard, and he found the previously mentioned zipper bag containing the tools directly across the drive.

Danny Bailey, manager of the T. H. Rogers Lumber Company, testified that on the evening of April 15, 1972, all gates and doors to the lumber yard were locked and secured. At approximately 1:00 a.m. April 16, 1972, he was telephoned by the police who summoned him to the yard. Upon his arrival at the lumber yard, he admitted two officers upon the premises. Shortly thereafter he observed officers escort three individuals from the premises. Further, he noted he observed the fence between the north gate and a building had been bent down. Further, he observed that tools and two-way radios were on the premises that evening, further stating that he had not previously observed the fence "bent down" nor had he observed these tools inside of the lumber yard when he closed the previous evening.

Albert Gorshing, Investigator for the District Attorney's Office, testified he conducted a follow-up investigation of the T. H. Rogers Lumber Company in Clinton, Oklahoma. State's Exhibit 1, a sketch of the lumber yard, was introduced into evidence generally describing the layout of the lumber yard. Gorshing's testimony established the lumber yard was completely enclosed by building walls or by a fence.

Deputy Richard Mueller testified he impounded a 1972 white Buick Electra after an investigation of its registration revealed defendant maintained ownership.

Agent Sid Cookerly, of the Oklahoma State Bureau of Investigation, testified that pursuant to a search warrant, he searched the above mentioned vehicle and found a receipt from the Scott Lumber Company, Amarillo, Texas, dated April 15, 1972. The receipt disclosed a purchase of a six pound sledge hammer, two pairs of gloves, two Proto brand screwdrivers, one Vaughn Super Bar, and a crowbar. Cook-

erly, after qualification, identified these as tools usually used in affecting a burglary.

Thereafter the State rested.

The defense rested without presenting any testimony.

█ In defense counsel's first proposition, it is submitted the element of breaking has not been established by sufficient evidence to sustain the jury's verdict. First, however, we must determine whether the fenced area of the lumber yard may be burglarized. In deciding this issue we first note the statutory authority for the instant prosecution, 21 O.S.1971, § 1435, which states as follows:

"Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin operated or vending machine or device with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree."

In construing the term "structure" in a second degree burglary statute, the Washington Supreme Court, in the case of State v. Roadhs, 71 Wash.2d 705, 430 P.2d 586 (1967) decided a case very closely in point, both factually and principally with the case at bench. In that case an opinion was rendered affirming a burglary conviction wherein defendant and companions were apprehended inside of a fenced compound which they gained entry to by severing the top three strands of fence wire. The compound arrangement was such that the walls of some of the buildings formed the exterior wall of the compound, while the cyclone fence constituted a continuation of the building wall, to the end that the exterior barrier of the compound consisted of a combination of building walls and a fence. Entry to the compound was normally made through one of the gates which were padlocked at night. In determining the propriety of predicating a conviction upon a second degree burglary statute which pro-

hibited the burglary of "structure" the court in *Roadhs*, supra, stated as follows:

"Considering the statutory definition given to the more specific term 'building,' and assuming, as we must, that the legislature intended to enlarge the scope of the burglary statute by the addition of the words 'or other structure' to RCW 9.19.020, we conclude that a fence of the sort here in question constitutes a 'structure' within the meaning of that statute. Were the fence a mere boundary fence or one erected for the sole purpose of esthetic beautification, it would not constitute a 'structure' as that term was intended to be interpreted by the legislature. However, where the fence is of such a nature that it is erected mainly for the purpose of protecting property within its confines and is, in fact, an integral part of a closed compound, its function becomes analogous to that of a 'building' and the fence itself constitutes a 'structure' subject to being burglarized.

Therefore, the fenced lumber yard is a structure which may be burglarized.

■ Further, we find *Roadhs*, supra, very closely in point in the consideration of the sufficiency of the evidence in the proof of a breaking. In the case at bench, the evidence established all entrance ways, gates and doors, were locked on the evening prior to the burglary. The accused was found, without explanation, inside of the lumber yard with the testimony of three witnesses indicating the top of the gate fence had been "bent down," a condition apparently not existing prior to the entry. In *Roadhs*, supra, the court held the severance of three strands of wire at the top of a fence was sufficient to constitute a breaking. Likewise, considering the Oklahoma rule which generally sets forth a burglary may be an act of physical force, however slight, by which an obstruction to entry is forcibly removed, Byington v. State, Okl.Cr., 363 P.2d 301 (1961), the evidence of force applied to the gate was sufficient to constitute a breaking. In light of the fact there was no explanation by defendant which explained his presence within the confines of the lumber yard fence, the jury was left with no other conclusion in the burglary prosecution except the theory of the State that the defendant entered the lumber yard at the point where the evidence indicated force had been applied to the gate. Ryans v. State, Okl.Cr., 420 P.2d 556 (1966). We therefore find this proposition to be without merit.

■ Defense counsel in his second proposition submits the evidence is insufficient to prove the intent to commit a felony or remove property from the premises as required by 21 O.S.1971, § 1435. In this regard we note the defendant in this case was shown to have been inside the lumber yard with burglary tools. The defendant was also equipped with a walkie-talkie and was arrested with other defendants hiding and concealed behind stacks of lumber while inside the yard. It is this Court's opinion this evidence was sufficient to provide a basis upon which the jury could determine the necessary intent to commit a felony or to remove property from the premises was present with the defendant. See Bell v. State, Okl.Cr., 502 P.2d 342 (1972). We therefore find this proposition to be without merit.

■ Counsel's final proposition asserts the punishment is excessive. We have repeatedly held the question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case. Wofford v. State, Okl.Cr., 494 P.2d 672 (1972). Considering the facts and circumstances in the instant case, coupled with the fact the jury imposed a penalty well within the statutory limits, we cannot conscientiously say the sentence imposed shocks the conscience of this Court. Considering the penalty imposed, we will not disturb the jury's assessment. See Jackson v. State, Okl.Cr., 494 P.2d 358 (1972).

The judgment and sentence is affirmed.

BUSSEY, J., concurs.