Michael JONES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–197.

Court of Criminal Appeals of Oklahoma.
June 23, 1975.

Joe Sam Vassar, Bristow, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jahn D. Rohrer, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The appellant, Michael Jones, hereinafter referred to as defendant, was charged, tried before a jury in a two-stage proceeding and convicted of the crime of Burglary in the Second Degree After Former Conviction of a Felony in the District Court of Creek County, Oklahoma in case No. CRF–74–16. Punishment was assessed at a term of fifteen (15) years in the state penitentiary. From a judgment and sentence in conformance with the verdict the defendant has perfected his timely appeal.

Briefly stated the evidence adduced at trial is as follows: On June 5, 1974, at about 1:00 A.M., Mr. Carl Oldham, a private citizen residing in Bristow, was returning to his home from work when he glanced at a public housing project near his house and saw three men working very hard to carry what appeared to be shiny garbage cans. Thinking this was unusual, he called the Bristow Police Department.

Officer Mike Newell of the Bristow Police Department was dispatched to investigate and contacted Oldham, who described the direction from which the men came. Driving over to Bob Webb's Grocery Store, he observed that the back light over the loading dock was out and the overhead door was raised about 8 or 10 inches, meat was lying outside the door, the handle of the door was "cocked over" as if hit by a large force, and a large pile of food lying inside the door.

Newell then entered the building, searched same, placed the door in its original position and 20 minutes later he heard the door being opened and three men, including the defendant, entered the store with a galvanized garbage can. He identified the defendant as one of the men who came through the door. They started picking up the food that was piled on the floor and putting it in the trash container. After observing for a few minutes, Newell stepped out and informed them that they were under arrest. The defendant attempted to escape by running through the store and out the front window, but was immediately apprehended.

Douglas Tuttle, Deputy Sheriff of Creek County, Oklahoma, testified that he and another officer were outside the front of the store when the defendant came out through the front window. The defendant was apprehended after two warning shots.

Robert Webb, owner of the grocery store, testified that he did not give the defendant or anybody else permission to enter or remove articles from his store and that the back door had been pried open.

Following the overruling of a demurrer to the evidence on the grounds that there was insufficient evidence to show the defendant broke into the building, the defendant introduced the testimony of Charles Franklin, one of the two persons apprehended with the defendant at the scene of the crime. Franklin testified that he and the defendant were on their way to visit some friends when a truck stopped and they were told that Bob's Grocery Store was open and there was merchandise that could be taken from there. They proceeded to the store where they found the door open about 2 or 3 feet and gained entry to the store without lifting the door. After they were inside the store, they were apprehended by Officer Newell.

After presenting the testimony of Mr. Franklin, both sides rested, the jury was instructed, closing arguments were had and the jury retired and brought in a verdict of guilty.

The trial then moved into the second stage of the proceedings. The State offered the testimony of Mrs. Fredine Arthurs, the Deputy Court Clerk for the Bristow Division of the Creek County District Court who identified the defendant

and testified concerning his prior convictions.

After the conclusion of the State's evidence, the defendant offered testimony of the defendant's mother and rested. The jury returned again to set punishment. After deliberating the jury returned with a verdict fixing punishment at fifteen (15) years imprisonment.

■ Defendant's first proposition in error contends that the verdict was not supported by the evidence since there was no evidence that the defendant broke into the store. With this contention we disagree.

The statute defining burglary in the second degree, 21 O.S. § 1435, reads in pertinent part as follows:

"Every person who *breaks* and enters any building . . . in which any property is kept, . . . with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree." (Emphasis added)

In the instant case it is necessary to determine whether there was sufficient poof of the element of "breaking". It is apparent from the evidence presented by the State that the overhead door to the storage area had been forcibly opened and left up approximately 8 to 10 inches. Although the door was partially open at the time Officer Newell arrived, the opening was not sufficient to allow an intruder's body to pass through into the interior of the building without removing the obstruction. This is obvious from the testimony of Officer Newell since he observed the defendant and two others raise the door and come inside.

This Court has held on numerous occasions that the "breaking" necessary to constitute the crime of burglary may be by any act of physical force, however slight, by which the obstruction to entering is forcibly removed. See *Stanley* v. *State*, Okl. Cr., 512 P.2d 829, wherein this Court held that the bending of the top strand of wire on a fence was sufficient forcible removal of an obstruction to constitute the necessary breaking. The partially closed door in the instant case constituted an obstruction to entry and the removal of said obstruction. constitutes a breaking sufficient to constitute the crime of burglary. Therefore, there was sufficient, although conflicting, evidence to support the verdict and defendant's first proposition is without merit.

■ Defense counsel nexts submits that the trial court erred in admitting evidence of a previous break-in, thus forcing the defendant to stand trial for a crime not charged in the information. However, it appears that the State submitted only evidence of a continuous crime. There was sufficient circumstantial evidence presented to prove that the defendant and his companions had been there before. Three men were seen earlier leaving the general vicinity with a heavy garbage container. Shortly thereafter the defendant and his companions appeared with an empty container and go directly to the remaining pile of food. Mr. Webb's testimony concerning items missing from the store which were not found in the possession of the defendant or his companions was not erroneously admitted since such testimony related to a continuous crime and not to a prior crime for which the defendant was not charged.

■ The defendant further submits that the rights of the defendant were subsequently prejudiced when the prosecutor, during the second stage of the proceeding, asked the following questions of the Deputy Court Clerk of Creek County, to-wit:

"Q. In that second case, CRF 72–22, on the Judgment and Sentence, could you tell us what the term was that he was given?"

"A. 72–22?"

"Q. Yes ma'am."

"A. Two years."

"Q. And when was he given that term, ma'am?"

"A. Well, this Judgment and Sentence was dated on the 10th day of August, 1972."

"Q. 10 August, '72. So, he might possibly be on parole now?"

"A. Probably, yes."

"MR. VASSAR: Your Honor, object to that."

"THE COURT: Sustain the objection."

"MR. VASSAR: Move the jury be admonished and move for a mistrial at this portion of the proceedings."

"THE COURT: I'll overrule your motion, at this time the jury will be admonished to disregard that last question and answer as to any parole that he might be on."

"MR. CORYELL:" We have no further questions, your Honor."

"THE COURT: The State rests on Part 2?"

The record further reflects that although the jury was admonished to disregard the remark concerning parole, the jury during its deliberation submitted two written questions to the trial court concerning parole. The jury was interested in how long the defendant would remain in prison before he was eligible for parole if a ten year, fifteen year, or a twenty year sentence was assessed. They were further interested in determining if there was any penalty which could be assessed where no parole was available. From the above it is obvious that the jury disregarded the admonishment of the trial court and considered parole in its deliberation.

It is the opinion of the Court that it was not unreasonable to assume in the instant case that the unfortunate mention of parole by the prosecutor was responsible for enhanced punishment. Therefore, justice would best be served by modifying the judgment and sentence appealed from to a term of ten (10) years in the state penitentiary. The judgment and sentence is so modified and as modified is affirmed.

BRETT, P. J., and BUSSEY, J., concur.