**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JACOB IND; JEFFREY PFLEGER,

    Plaintiffs - Appellants,

v.

RICK WRIGHT; DAN FOSTER;
LARRY REID; STEVE SHUH; LEE
HENDRIX; COLORADO
DEPARTMENT OF CORRECTIONS,

    Defendants - Appellees.

No. 01-1338
D.C. No. 00-B-428
(D. Colorado)

ORDER
Filed November 25, 2002

Before **KELLY** , **BRISCOE** , and **LUCERO** , Circuit Judges.

This matter is before us on plaintiffs' petition for rehearing and suggestion for rehearing en banc. For the following reasons, we grant the rehearing petition in part and deny in part.

Plaintiffs brought this civil rights action against the Colorado Department of Corrections (DOC) and its employees, alleging that the DOC's policies and practices infringed on their First Amendment rights. The district court granted summary judgment in favor of defendants on all claims. As part of its judgment,

the district court dismissed the claims against defendant Shuh for lack of personal participation.

In our order and judgment, issued August 14, 2002, we affirmed the district court's judgment in part and reversed in part. Because the district court failed to consider plaintiffs' due process claim regarding the reading materials screening process, we remanded this claim for further action. In their petition for rehearing, plaintiffs argue that DOC employee Shuh should be reinstated as a defendant regarding the due process claim because he was a member of the prison's reading committee. As the record contains evidence to support a finding that Shuh personally participated in the reading materials screening process, we grant plaintiffs' rehearing petition in part, and order that Shuh be reinstated as a defendant with regard to the due process claim *only*. In all other respects we deny the rehearing petition. A copy of the amended order and judgment is attached to this order.

Plaintiffs' suggestion for rehearing en banc has been transmitted to all the judges of the court in regular active service in accordance with Rule 35(b) of the Federal Rules of Appellate Procedure. No member of the hearing panel and no judge in regular active service on the court having requested that the court be

polled on rehearing en banc, Rule 35, Federal Rules of Appellate Procedure, the

suggestion for rehearing en banc is denied.  The mandate shall issue forthwith.


Entered for the Court
PATRICK FISHER, Clerk

By: /s/ Belinda Begley
　　　Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 25 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

JACOB IND; JEFFREY PFLEGER,

Plaintiffs - Appellants,

v.

RICK WRIGHT; DAN FOSTER;
LARRY REID; STEVE SHUH; LEE
HENDRIX; COLORADO
DEPARTMENT OF CORRECTIONS,

Defendants - Appellees.

No. 01-1338
D.C. No. 00-B-428
(D. Colorado)

---

AMENDED ORDER AND JUDGMENT    *

---

Before **KELLY** , **BRISCOE** , and **LUCERO** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal.    *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiffs Jacob Ind and Jeffrey Pfleger appeal the district court's grant of summary judgment in favor of defendants on their civil rights lawsuit brought pursuant to 42 U.S.C. § 1983, and several other federal statutes. Because plaintiffs have not shown the existence of a genuine issue of material fact or that the district court committed legal error regarding: (1) the Eleventh Amendment dismissal of claims against defendants in their official capacities; (2) the dismissal of claims against certain defendants for lack of personal participation, except for the dismissal of plaintiffs' due process claim against defendant Shuh; (3) the constitutionality of Colorado Department of Corrections (DOC) administrative regulation 300-26, on its face and as applied, as a restriction on plaintiffs' First Amendment rights; and (4) the failure to provide separate taped religious programming, we affirm those portions of the district court's judgment. Because the district court failed to address plaintiffs' arguments regarding: (1) the classification of their religious group as a "Security Threat Group"; (2) the constitutionality of DOC administrative regulation 800-1 as applied to members of the Christian Identity Faith; and (3) the adequacy of the due process protections surrounding the censorship process, we remand this case for determination of those issues. Finally, because the district court used an incorrect analysis to evaluate plaintiffs' claim to Passover-related food and a communion

packet, we reverse that portion of the judgment and remand for further proceedings.

Plaintiffs are members of the "Christian Identity Faith" who are currently incarcerated at the Colorado State Penitentiary. The Christian Identity Faith rests upon White Supremacy principles, teaching that all other races and religions are inferior. Plaintiffs brought this action against the DOC and its employees, alleging that DOC policies and practices deprived them of the right to practice their religion and discriminated against their religion.

In particular, plaintiffs complained about DOC administrative regulation 300-26, which describes the types of reading material an inmate may receive or possess consistent with the DOC's goals of maintaining security, good order, and public safety, as well as its goal of encouraging rehabilitation. *See* R. I, doc. 23, Ex. A. Pursuant to this regulation, the DOC prohibits materials that an objective person could reasonably believe "encourage or endorse: violence or disorder; . . . hatred or contempt of other persons; [or] vengeance against other persons." *Id.* at 2. The regulation specifically identifies as excludable "[a]ny publication advocating hatred or contempt of other persons," and "[a]ny . . . material produced or distributed by Security Threat Groups (STGs) or . . . material advocating or depicting association or membership in a STG which is contrary to

-3-

the security interests of the facility." *Id.* Many of plaintiffs' Christian Identity reading materials have been prohibited under these standards.

Plaintiffs alleged that DOC administrative regulation 300-26 was unconstitutionally overbroad and that it had been applied in a discriminatory fashion. They also alleged that the regulation, both on its face and as applied, violated due process based on inadequate notice, no time limit for making the censorship decisions, and no opportunity to appeal the decisions.

Plaintiffs also complained that DOC administrative regulation 800-1 used an unconstitutional standard to exclude them from the category of a "legitimate" faith group and that their constitutional rights were violated by the prison's refusal to provide them with a Passover meal, a communion packet, and leaven-free foods during the Passover week. Finally, plaintiffs alleged that they were constitutionally entitled to Christian Identity taped religious programming.

The magistrate judge to whom the case was assigned recommended that summary judgment be granted in favor of defendants based, in part, on the district court's decision in the related action of *Rooks v. Zavares*, Civil Action No. 99-B-631 (D. Colo. Jan. 25, 2001). *See* R. I, doc. 50, Ex. 2. The recommendation was based on the representations by both plaintiffs and defendants that the claims in *Rooks* were essentially identical to those raised in this lawsuit. The magistrate judge's order recommended the following: (1) that

plaintiffs' claims for monetary relief be dismissed against defendants in their official capacities based on Eleventh Amendment sovereign immunity; (2) that the First Amendment claims regarding administrative regulation 300-26 brought against defendants Hendricks and Shuh be dismissed for lack of personal participation; (3) that the claims relating to Passover food brought against defendants Foster, Shuh, and Wright be dismissed for lack of personal participation; (4) that the claims relating to the failure to provide separate religious programming brought against defendants Foster, Wright, Hendrix, and Shuh be dismissed for lack of personal participation; (5) that summary judgment be granted in favor of the remaining defendants on plaintiffs' claim that administrative regulation 300-26 is unconstitutional on its face and as applied; (6) that summary judgment be granted in favor of defendants on plaintiffs' claim of entitlement to Passover food and a communion packet because plaintiffs had not shown that observing Passover in this form was a tenet of their religion; and (7) that summary judgment be granted in favor of defendants on the claim for separate religious programming based on the absence of evidence that defendants have refused to allow such programming. After *de novo* review, the district court adopted the magistrate judge's recommendations.

We review the grant or denial of summary judgment *de novo*, applying the same legal standard used by the district court. *McKnight v. Kimberly Clark*

*Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, "we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *McKnight*, 149 F.3d at 1128 (quotation omitted).

We examine first the constitutionality of DOC administrative regulation 300-26, using the standards adopted by the Supreme Court in *Thornburgh v. Abbott*, 490 U.S. 401 (1989). There, the Court held that regulations governing the receipt of reading materials by inmates must be analyzed under a reasonableness standard, and that such regulations are valid if they are reasonably related to a legitimate penological interest. *Id.* at 413. These determinations should be made using the four-prong inquiry established in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *Thornburgh*, 490 U.S. at 413. Under this standard, courts must consider (1) whether there is a rational connection between the prison policy and a legitimate governmental interest; (2) whether there are alternative means for inmates to exercise their constitutional rights; (3) the effect that accommodating the exercise of the disputed rights would have on guards, other inmates, and

-6-

prison resources; and (4) whether there are ready, easy-to-implement alternatives

that would accommodate the inmates' rights.

In examining the particular prison regulation before it, the *Thornburgh*

Court first held that the interest in protecting prison security is legitimate "beyond

question." 490 U.S. at 415. The Court then held that "[w[here, as here, prison

administrators draw distinctions between publications solely on the basis of their

potential implications for prison security, the regulations are neutral." *Id.* at

415-16 (quotation omitted). The Court concluded that regulations allowing prison

authorities discretion to determine that particular reading material creates an

intolerable risk of disorder under the conditions of their particular institution are

rationally related to the legitimate interest of maintaining prison security. *Id.* at

416-17. Because this analysis applies with equal validity to DOC administrative

regulation 300-26, we conclude that the regulation is reasonably related to

legitimate penological objectives.

Regarding the second, third, and fourth prongs of the *Turner* analysis, we

agree with the district court that plaintiffs have not raised triable issues of fact.

The Supreme Court itself, in *Thornburgh*, held that so long as prison regulations

permit a broad range of publications to be sent, received, and read, prison inmates

have adequate alternative means for exercising their religion. *Id.* at 418. We note

that plaintiffs have not alleged they have been denied the main texts of their

religion, including the King James Bible, Strong's Exhaustive Concordance, and Young's Analytical Concordance. *See* R. I, doc.23, ex. C.

Further, to allow plaintiffs to receive and possess materials that espouse hatred or contempt of others would negatively impact other prisoners, guards who must prevent any resulting animosity, and prison resources aimed at preventing violence. In light of the extreme racial tensions and violence prevalent in prisons, such provocative materials are likely to increase the stress on prisoners, guards, and resources alike. In addition, plaintiffs have not shown that there are easy alternatives to prohibiting material that expresses hatred or contempt of others. Although they argue that the standard should be limited to materials that "advocate[] violence or are so inflammatory as to reasonably be believed to incite violence," Aplts' Br. at 3H, the Supreme Court specifically stated in *Thornburgh* that prison administrators are not required to limit their exclusions to materials which are "likely" to lead to violence. 490 U.S. at 417.

Plaintiffs also have not shown that the district court erred in holding that their reading materials were properly excluded under the regulation. We have independently reviewed all of the exhibits submitted with the pleadings and those submitted under seal. Based on our review, we conclude that the prohibited materials could reasonably be regarded as "publication[s] advocating hatred or

-8-

contempt of other persons," or "encourag[ing] or endors[ing] . . . violence or disorder." R. I, doc. 23, Ex. A at 2.

Next, plaintiffs challenge the district court's grant of summary judgment in favor of defendants on their claim that they are entitled to special foods and a communion packet to enable them to celebrate Passover. They argue that their affidavits and doctrinal materials establish that at least a portion of Christian Identity practitioners believe that consuming Passover foods and a communion packet is a necessary part of their religion. The district court held that plaintiffs had not raised a triable issue regarding their entitlement to such accommodations because they did not show that such an observation of Passover was a major tenet of the Christian Identity Faith. Under our case law, however, this is not the proper inquiry.

In *LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991), we held that a prisoner's belief in religious dietary practices is constitutionally protected if the belief is "genuine and sincere," even if such dietary practices are not doctrinally "required" by the prisoner's religion. Once a prisoner's sincerity has been established, he is entitled to invoke First Amendment protections, and the court must engage in the reasonableness inquiry established by *Turner v. Safley*. *LaFevers*, 936 F.2d at 1119-20. Because here the district court did not determine whether plaintiffs raised a triable issue regarding the sincerity of their beliefs as

to the observance of Passover, we must reverse the summary judgment in favor of defendants and remand this claim for further proceedings.

Plaintiffs' complaint also challenged the DOC's determination that the Christian Identity Faith is a "STG" whose materials may be prohibited; challenged the standards set forth in DOC administrative regulation 800-1 defining a "legitimate" faith group; and raised a claim that the procedure for censoring reading material violated due process because of inadequate notice, unrestricted time period for decision, and the absence of an opportunity to be heard. *See* R. I, doc. 6 at 3-3E and 4-4A. Neither the magistrate judge nor the district court addressed these claims, which plaintiffs have preserved in their objections to the magistrate judge's decision. Therefore, the case must be remanded for further proceedings on these issues as well. Further, DOC employee Shuh must be reinstated as a defendant with regard to the due process claim *only*, as there is evidence to support a finding that he participated in the reading materials screening process.

Plaintiffs' motion to supplement the record is granted.  The judgment is AFFIRMED in part and REVERSED in part, and the case is remanded for further proceedings.  The mandate shall issue forthwith.


Entered for the Court


Mary Beck Briscoe
Circuit Judge