FILED
United States Court of Appeals
Tenth Circuit

September 11, 2015

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

JACOB IND,

      Plaintiff - Appellee,

v.

COLORADO DEPARTMENT OF
CORRECTIONS,

      Defendant - Appellant.

No. 14-1168

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:09-CV-00537-WJM-KLM)**

---

Jacob D. Massee, Assistant Attorney General (John W. Suthers, Attorney General, and Kristin A. Lockwood, Assistant Attorney General, with him on the briefs) Office of the Attorney General, State of Colorado, Denver, Colorado, for Defendant-Appellant.

Carrie A. Claiborne of Husch Blackwell LLP, Denver, Colorado (Sudee Mirsafian Wright and Barbara Grandjean of Husch Blackwell LLP, Denver, Colorado; and Michael T. Raupp of Husch Blackweell LLP Kansas City, Missouri, with her on the briefs) for Plaintiff-Appellee.

---

Before **BRISCOE**, Chief Judge, **SEYMOUR**, and **KELLY**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Appellee Jacob Ind has been incarcerated in Colorado state prisons since 1992. At the time he filed this lawsuit on March 13, 2009, he was in administrative segregation at the Colorado State Penitentiary ("CSP") subject to a limit of two personal books imposed by the Colorado Department of Corrections ("CDOC"). Mr. Ind filed this action pursuant to 42 U.S.C. § 1983, claiming the book limit was a substantial burden on his sincerely-held religious beliefs in violation of his constitutional rights and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.*[1]

On June 27, 2011, Mr. Ind was transferred out of administrative segregation and into the general population, where he is now allowed 15 personal books. The CDOC moved to dismiss the case as moot. Although the magistrate judge recommended the motion be granted, the district court concluded Mr. Ind would likely be returned to segregation in the future and denied the motion. Following a bench trial, the court held CDOC's two-book policy violated Mr. Ind's rights

---

[1]RLUIPA provides in relevant part:
No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person–
    (1) is in furtherance of a compelling governmental interest; and
    (2) is the least restrictive means of furthering that compelling governmental interest.
42 U.S.C. § 2000cc-1(a).

under RLUIPA and directed that, in the event plaintiff returns to administrative segregation at CSP, CDOC would be enjoined from enforcing the policy against him. CDOC appeals, arguing, *inter alia*, that the case is moot. We hold that Mr. Ind's transfer from administrative segregation to the general population moots his claim, thereby depriving us of jurisdiction.

# I

CSP is a Level V security correctional institution; it houses the most violent and dangerous offenders in what is known as "administrative segregation." Aplt. App. at 961, 963. Administrative segregation is designed to be a temporary placement with the goal of "facilitat[ing] change in offender behavior and progress[ing] them back to a general population permanent facility." *Id.* at 962.

Offenses that can lead to placement in administrative segregation include murder, rape, escape or attempted escape, inciting to riot, engaging in a riot, possession of dangerous contraband or security threat group activity such as recruiting for a gang.[2] *Id.* at 963-64. Offenders are only assigned to

___

[2]The Colorado Department of Corrections Administrative Regulation defined "Security Threat Group" during the relevant time period as follows:
> A group of three or more individuals with a common interest, bond or activity characterized by criminal or delinquent conduct, engaged in either collectively or individually, with the potential to create a security threat to DOC facilities or offices and or functions within DOC. This shall include, but not be limited to, gangs, and disruptive

administrative segregation after they have had a due process hearing, although inmates can be placed in administrative segregation prior to the hearing on what is known as "removal from population status." *Id.* at 964.

When Mr. Ind was in administrative segregation at CSP, there were four levels. Level 1 was reserved for offenders who acted out or compromised security in the facility. Ordinarily, however, when an offender was assigned to administrative segregation, he was placed at Level 2. After 90 days, he would be reviewed for progression to Level 3. After 90 days at Level 3, he would be reviewed again for progression either to Level 4A or 4B. After completing the program at Level 4, the offender progressed to a general population facility. In all, administrative segregation was intended to take a minimum of nine months to complete, although it could take longer depending on the severity of the offense and the inmate's behavior. Each level of administrative segregation at CSP had certain restrictions, including property restrictions. Pertinent to this dispute, Level 2 and 3 offenders were restricted to two personal books.

Mr. Ind was assigned to administrative segregation from September 1995 to April 2003, when he was transferred to the general population at Limon Correctional Facility ("Limon"). On September 17, 2007, he was removed from Limon to CSP on "removal from population" status and charged with violating the

and deviant groups.
Aplt. App. at 285.

Code of Penal Discipline by (1) attempting to incite a riot and (2) verbal abuse.[3]

He was convicted of the charges at his disciplinary hearing, and subsequently was

served with a notice of an administrative segregation hearing. At the conclusion

of the hearing, he was assigned to administrative segregation at CSP.

Mr. Ind was held in administrative segregation at CSP until December 3,

2009, when he was transferred from CSP to Centennial Correctional Facility

("CCF"), a prison with both Level IV and Level V units where inmates are housed

in either close custody or administrative segregation. There, he was subject to a

limitation of five personal books. *Id.* at 99-114. On June 27, 2011, he was

transferred from CCF back to Limon, a Level IV facility, where he is housed in

the general population. He has remained at Limon since then.

Mr. Ind filed his original Complaint against CDOC, prison officials, and

employees while he was still at CSP. After submitting several amended

pleadings, he filed his final Amended Complaint on October 25, 2010. He

primarily challenged the facility level policies at CSP, which he alleged interfered

with the practice of his religion.[4] Among his complaints, Mr. Ind contended that

_____

[3]According to the Notice of Charge, a guard working the evening medication line heard Mr. Ind say to fellow inmates in the line, ". . . think they're beginning to realize how vulnerable they are, we could rush them and take their guns . . . fucking cowards." *Id.* at 1091.

[4]Mr. Ind is a follower of "Christian Separatism," a subgroup of the "Christian Identity Faith" which has been described as "rest[ing] upon White Supremacy principles, teaching that all other races and religions are inferior." *Ind v. Wright*, 52 Fed. Appx. 434, 436 (10th Cir. 2002) (unpublished decision).

the policy limit of two personal books per inmate in administrative segregation–as opposed to a 15-book limit for inmates in the general population–was a substantial burden on his sincerely-held religious beliefs. He asserted claims for violation of federal and state constitutional rights as well as RLUIPA, and sought declaratory and injunctive relief and damages. *Id.* at 198-200. Before trial, Mr. Ind dismissed four of his five claims. Ultimately the case proceeded to trial only against CDOC and only with respect to the two personal books limitation. *Id.* at 1272.

On January 20, 2012, defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), contending Mr. Ind's transfer to Limon rendered his remaining claims moot because he was no longer subject to the restrictions giving rise to his suit. They also asserted the claims were barred by Eleventh Amendment sovereign immunity. The magistrate judge entered a recommendation that the motion be granted based on mootness. The district court declined to adopt the recommendation, however, finding there was a reasonable likelihood Mr. Ind would be returned to administrative segregation at some point in the future and therefore his claim was not moot. *Id.* at 330-39, 342. The court also rejected defendants' sovereign immunity claim. *Id.* at 341-42.

At the conclusion of a two-day bench trial, the district court entered Final Findings of Fact and Conclusions of Law, holding that CSP's book policy, as applied to Mr. Ind, violated RLUIPA. *Id.* at 1272-1314. The court did not

invalidate the policy as to all CSP inmates but stated, "[S]hould Plaintiff return to administrative segregation at CSP, Defendant is enjoined from enforcing against him its current book limitation policy, set forth in I/A 850-06." *Id.* at 1315-16. The court also concluded that Mr. Ind was entitled to recover reasonable attorney fees. *Id.*

## II

Before reaching the merits of this case, we must consider the jurisdictional question of mootness. The doctrine of mootness is grounded in Article III's limitation on the jurisdiction of federal courts to "cases and controversies." *See* U.S. Const. art. III, § 2, cl. 1. At the start of litigation, a plaintiff must show standing under Article III by demonstrating: "(1) an injury in fact; (2) a causal connection between the injury and the challenged action; and (3) *a likelihood that a favorable decision will redress the injury*." *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011) (emphasis added) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000)).

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) (citation omitted). Moreover, "[t]his requirement exists at all stages of federal judicial proceedings, and it is therefore not enough that the dispute was alive when the

suit was filed; the parties must continue to have a personal stake in the outcome."
*Id.*

"In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world. When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (citation and quotation marks omitted). Put another way, a case becomes moot "when a plaintiff no longer suffers 'actual injury that can be redressed by a favorable judicial decision.'" *Rhodes v. Judiscak*, 676 F.3d 931, 933 (10th Cir. 2012) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)). Because mootness is an issue of subject matter jurisdiction, it can be raised at any stage of the proceedings. *See Kennedy v. Lubar*, 273 F.3d 1293, 1301-02 (10th Cir. 2001).

But a court will not dismiss a case as moot if: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002) (citations omitted). The second and third exceptions are at issue in this case.

The district court found the voluntary cessation exception applied. In so

-8-

doing, the court noted Mr. Ind had at that time been incarcerated at CSP and/or CCF in administrative segregation for more than 11 of his 17 years in prison and "is a member of a Security Threat Group who is, by his own admission, actively recruiting members to his group." Aplt. App. at 340. Accordingly, the court found "there is a reasonable likelihood that Plaintiff will be returned to CSP at some point in the future." *Id.* at 341. The court did not address applicability of the "capable of repetition, yet evading review" exception. *Id.* at 341 n.7. On appeal, however, Mr. Ind contends both exceptions apply.

## A. Voluntary Cessation

A plaintiff's claim is not rendered moot by the voluntary cessation of a challenged practice which the defendant is free to resume at any time. *Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008). This exception to mootness "exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct." *Id.*

Voluntary cessation *may* moot litigation, however, if two conditions are satisfied: "'(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

The defendant "bears the 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again." *Id.* at 1116 (quoting *Friends of the Earth, Inc.*, 528 U.S. at 189). Moreover, "[v]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Id.* at 1115 (quotation marks and citation omitted).

The record in this case is devoid of evidence that Mr. Ind's return to the general population was a ploy by CDOC to deprive the court of jurisdiction. Instead, the record establishes that he was placed in the general population after he successfully completed the required phases of the administrative segregation program.

Mr. Ind nevertheless asserts, and the district court agreed, that his transfer out of administrative segregation did not render his claim moot because his history of having spent more than half of his prison sentence in administrative segregation demonstrates a reasonable probability he will return there. But this position ignores the well-established principle that "for purposes of assessing the likelihood that state authorities will reinflict a given injury, we generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." *Honig v. Doe*, 484 U.S. 305, 320 (1988); *McAlpine v. Thompson*, 187 F.3d 1213, 1217 (10th Cir. 1999) (quoting *Honig*).

Moreover, Mr. Ind has remained in the general population for more than four years since his last release from administrative segregation, and for three years since the district court entered its order finding a reasonable likelihood that CDOC would send Mr. Ind back to administrative segregation. Furthermore, while the CDOC considered Mr. Ind a member of a white supremacist Security Threat Group for some period of time, it removed that affiliation from his profile prior to trial after he submitted the proper request form. Given these circumstances and our precedent, we will not assume Mr. Ind will commit future violations that will land him in administrative segregation once again.

It is undisputed that Mr. Ind's release from administrative segregation has put an end to the alleged violation of his rights. Mr. Ind remains in the general population, and we conclude that CDOC has carried its burden of showing the challenged conduct cannot reasonably be expected to resume. Accordingly, the voluntary cessation exception does not rescue Mr. Ind's claim from mootness.

## B. Capable of Repetition

Mr. Ind. also relies on another exception to mootness, whether the issue is a wrong capable of repetition which will evade review. In contrast to the voluntary cessation exception, which places the burden of proof on the defendant, the plaintiff bears the burden of establishing the issue is a wrong capable of repetition yet evading review. *Jordan*, 654 F.3d at 1035. The exception is "narrow," *McAlpine*, 187 F.3d at 1216, and "is only to be used in exceptional situations,"

*Jordan*, 654 F.3d at 1035 (citations and quotation marks omitted).

To avail himself of the exception, a plaintiff must establish two requirements: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Id.* (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curium)). The Supreme Court further amplified this standard in *Murphy v. Hunt*, 455 U.S. 478 (1982) (per curium), stating:

> The Court has never held that a mere physical or theoretical possibility was sufficient to satisfy the test stated in *Weinstein*. If this were true, virtually any matter of short duration would be reviewable. Rather we have said that there must be a "reasonable expectation" or a "demonstrated probability" that the same controversy will recur involving the same complaining party.

*Id.* at 482 (quoting *Weinstein*, 423 U.S. at 149).

Our case of *McAlpine v. Thompson*, 187 F.3d 1213 (10th Cir. 1999), is illustrative. There, an inmate member of the Native American Church filed a petition for mandamus seeking an order requiring the prison warden to provide peyote and other ceremonial items for church ceremonies in his prison. *Id.* at 1214. The district court dismissed the claim on its merits, and McAlpine appealed. While the appeal was pending, McAlpine completed his term of incarceration and was released on parole. *Id.* at 1214-15. The warden contended the inmate's release rendered his claim moot, but the former inmate argued that

the acts he complained of were "capable of repetition, yet evading review" because he was subject to revocation of his parole and reincarceration. *Id.* at 1215.

We held that McAlpine failed to establish either of the two required elements for the exception. With respect to the first element, he had not shown that there would be insufficient time for him to obtain review of his claim in federal court in the event he found himself in prison again and raised the same issue. *Id.* at 1217. And with respect to the second element, we declined to assume he would repeat the misconduct that previously landed him in prison, citing *Honig*. *Id.* at 1218.

We need not decide in this case whether Mr. Ind has established that there would be insufficient time to challenge the two-book limitation if he were ever returned to administrative segregation because he has not met the second prong of the "capable of repetition" exception to the mootness doctrine. As discussed above, Mr. Ind has not shown a reasonable likelihood he will be subjected to the same treatment again because, pursuant to our precedent, we decline to assume he will repeat the misconduct that previously got him sent to administrative segregation. *See Honig* and *McAlpine*, supra.

The Fourth Circuit reached the same conclusion in *Incumaa v. Ozmint*, 507 F.3d 281 (4th Cir. 2007). There, Kenyatta Incumaa, an inmate serving a life sentence in South Carolina state prison, brought a § 1983 action against the

South Carolina Department of Corrections ("SCDC"), alleging its policy barring inmates in the Maximum Security Unit ("MSU") from receiving publications via the mail violated his First Amendment rights. He sought declaratory relief and an injunction against enforcement of the ban. *Id.* at 284. The district court granted summary judgment in favor of the SCDC on the merits, finding the ban did not violate Incumaa's constitutional rights. *Id.* Shortly after Incumaa filed his opening appellate brief, he was released from maximum security. *Id.* at 285. Ultimately, the SCDC moved to dismiss the appeal as moot, arguing Incumaa was no longer housed in the maximum security unit and there was no indication he would ever be subjected to the challenged policy again, absent some sufficiently recalcitrant behavior on his part. *Id.* As here, Incumaa invoked both the voluntary cessation and "capable of repetition" exceptions. *Id.* at 288-89.

With respect to the voluntary cessation exception, the court found no indication in the record that the SCDC removed Incumaa from maximum security in an effort to avoid judicial review of the challenged policy, or that the release was "anything but normal operation of the review procedures used in making the determination to move an inmate out of the MSU." *Id.* at 288. It further stated:

> [W]e must assume, from the lack of any evidence to the contrary, that the SCDC promoted Incumaa to the SMU because *he* ceased his bad behavior. Clearly, this is not the kind of "voluntary cessation" that the exception covers. More to the point, it is clear that if Incumaa is ever returned to the MSU, it will be of his own doing, and not because the SCDC believes that the specter of litigation has passed.

-14-

*Id.* (emphasis in original).

The court also rejected Incumaa's argument that the issue was one which, although moot, was capable of repetition yet evading review. It held that Incumaa had not carried his burden of establishing there was a reasonable expectation he would be subject to the publications ban again in the future because "assignment to the MSU is directly tied to an inmate's bad behavior, so Incumaa thus 'holds the keys' to his remaining free from the unit." *Id.* at 289. The court concluded that "[b]ecause Incumaa will only find himself in the MSU again if he bucks prison policy, and because we presume that he will abide by those policies, . . . the 'capable of repetition, yet evading review' exception to mootness does not apply in this case." *Id.*

Here, as in *Incumaa*, Mr. Ind has failed to carry his burden of establishing the "capable of repetition" exception to the mootness doctrine.

### III

As the Fourth Circuit recognized, "[T]he Constitution forbids us from pontificating about abstractions in the law or merely giving advice about the potential legal deficiencies of law or policy when no ongoing controversy exists with respect to that law or policy." *Id.* Mr. Ind's claim is moot because he is no longer in administrative segregation.

Accordingly, we REVERSE the decision of the district court and REMAND

-15-

with instructions to dismiss the case as moot.[5]

_____

[5]We deny as moot the CDOC's motion for leave to file a Second Supplemental Appendix.