**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 9, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAVID ROBERT MCFARLAND,

    Defendant - Appellant.

No. 17-6143
(D.C. No. 5:13-CR-00074-HE-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **McKAY**, and **KELLY**, Circuit Judges.
_____

David McFarland appeals the district court's order revoking his supervised release pursuant to 18 U.S.C. § 3583. He contends that he was denied his right of cross-examination at the preliminary hearing and that the evidence was insufficient to support the criminal allegations underlying the revocation. We dismiss the first argument for lack of jurisdiction and affirm on the second.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

In September 2013, Mr. McFarland was convicted of being a felon in possession of a firearm and sentenced to 37 months' imprisonment, followed by three years' supervised release. Two of the conditions of his supervised release were that he not commit another crime and that he not associate with any person engaged in criminal activity. He began his supervised release in September 2016. In May 2017, the United States Probation Office sought to revoke his release based on his attempt to steal a local farmer's Polaris Ranger ATV.

The Polaris Ranger was kept in a pole barn, where the farmer stored hay. The pole barn had a roof, two walls, and moveable panels erected to keep cattle out of the barn. On May 11, 2017, the farmer noticed that his Polaris Ranger had been moved and the key was not in its hiding place. Therefore, he and three friends staked out the barn that night, with the farmer in the barn armed with a rifle, two of the friends in a pickup truck near the locked gate to the property, and the third in a pickup truck along the road. At about 1:00 a.m. Mr. McFarland and one Jared Fuller drove up to the locked gate in a pickup truck pulling a trailer. Using bolt cutters, one of them cut the lock on the gate to the property. Then both men walked to the barn and began to unpin the panels. The farmer shouted at the men to stop, they took off running, and the farmer fired three or four warning shots. Mr. McFarland ran back to his truck and drove away. The farmer fired another shot at the truck, intending to shoot the front tire.

2

The farmer's friends followed Mr. McFarland along the road, where a police car fell in behind the McFarland pickup truck in response to a call about a shooting. The officer activated his lights and sirens, but Mr. McFarland did not pull over, nor did he speed or turn off his headlights. The officer followed him to his grandfather's residence where the officer arrested Mr. McFarland.

Mr. McFarland was charged in state court with burglary in the second degree, eluding/attempting to elude a police officer, malicious destruction of property, and trespassing. The government relied on these charges, as well as an additional charge of associating with another in engaging in crime, to seek revocation. A magistrate judge conducted a preliminary hearing and determined that the witnesses did not need to appear in person. At the conclusion of the hearing, the magistrate judge held that the government had established probable cause and bound Mr. McFarland over for a final revocation hearing. A district judge held a final revocation hearing at which the farmer, one of his friends, the arresting police officer, and a probation officer testified. Mr. McFarland's attorney cross-examined all witnesses. The district court found that all of the charged violations were established by a preponderance of the evidence. Consequently, the court revoked Mr. McFarland's supervised release and imposed a sentence of 14 months' incarceration to be followed by an additional 12 months' supervised released.

## II.    Standards of Review

"We review the district court's decision to revoke supervised release for abuse of discretion.  Legal questions relating to the revocation of supervised release are reviewed *de novo*."  *United States v. Jones*, 818 F.3d 1091, 1097 (10th Cir. 2016) (internal quotation marks omitted).

## III.    Denial of Cross-examination at Preliminary Hearing

Mr. McFarland contends the magistrate judge's failure to require the appearance of the witnesses at the preliminary revocation hearing where they could be subjected to cross-examination ran afoul of *Jones* and Fed. R. Crim. P. 32.1(b)(1)(B)(iii).  *Jones* held that a "balancing test applies when determining a releasee's confrontation rights at a revocation hearing," and noted that the test applies to preliminary revocation hearings.  818 F.3d at 1099 & n.5.  The test asks "whether the interest of justice does not require the witness to appear by balancing (1) the person's interest in the constitutionally guaranteed right to confrontation against (2) the government's good cause for denying it."  *Id.* at 1099-1100 (internal quotation marks omitted).

Even if the magistrate judge's failure to apply the balancing test was error, we conclude that this issue is moot.  To show Article III standing, a litigant must demonstrate "(1) an injury in fact; (2) a causal connection between the injury and the challenged action; and (3) a *likelihood that a favorable decision will redress the injury*."  *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (internal quotation marks omitted).  "[A] case becomes moot when a [claimant] no longer

4

suffers actual injury that can be redressed by a favorable judicial decision." *Id.* (internal quotation marks omitted).

Mr. McFarland acknowledges that he was able to confront and cross-examine the witnesses at the final revocation hearing. Nevertheless, he relies on one of the exceptions to the mootness doctrine—"the issue is deemed a wrong capable of repetition yet evading review," *id.* (internal quotation marks omitted). He contends that this is an issue that may never come before the court in a posture warranting a decision.

This exception requires two showings for a claimant to meet his burden to establish that the wrong is capable of repetition yet evading review: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Id.* at 1215 (brackets and internal quotation marks omitted). Mr. McFarland has made no showing, nor does he claim, that he will again be charged with revocation of his supervised release. Therefore, he has failed to establish the second element, a failure that is fatal to his argument. *See id.* at 1216 (holding failure to establish second element is dispositive).

Consequently, any ruling by this court would be an impermissible advisory opinion. *See Golden v. Zwickler*, 394 U.S. 103, 107 (1969) ("The federal courts established pursuant to Article III of the Constitution do not render advisory opinions." (brackets and internal quotation marks omitted)). Because this claim is moot, we lack jurisdiction and dismiss the claim. *See Ind*, 801 F.3d at 1211.

5

## IV.     Sufficiency of the Evidence

Mr. McFarland asserts that the evidence was insufficient to establish that he violated the conditions of his supervised release.  A district court may revoke a defendant's supervised release if it "finds by a preponderance of the evidence that [he] violated a condition of supervised release."  18 U.S.C. § 3583(e)(3).

Mr. McFarland was charged with second degree burglary pursuant to Okla. Stat. tit. 21, § 1435, which provides:

> Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin-operated or vending machine or device with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree.

He maintains that the pole barn does not come within the statutory definitions of a structure so he was not guilty of this crime.

The pole barn in this case is similar to the lumberyard held to qualify as an "other structure" under the statute in *Stanley v. State*, 512 P.2d 829, 832 (Okla. Crim. App. 1973).  Like the fence around the lumberyard in *Stanley*, the moveable panels on the pole barn in this case were "erected mainly for the purpose of protecting property within [their] confines and [were], in fact, an integral part of a closed compound."  *Id.* (internal quotation marks omitted).  Therefore, their function was "analogous to that of a 'building'" and the moveable panels "constitute[d] a 'structure' subject to being burglarized."  *Id.* (internal quotation marks omitted).

6

Thus, the evidence was sufficient for the district court to find by a preponderance of the evidence that Mr. McFarland violated the second-degree burglary statute.

Next, Mr. McFarland claims the evidence was insufficient on the charge of eluding/attempting to elude a police officer. Okla. Stat. tit. 21, § 540A(A), provides as follows:

> A. Any operator of a motor vehicle who has received a visual and audible signal, a red light and a siren from a peace officer driving a motor vehicle showing the same to be an official police, sheriff, highway patrol or state game ranger vehicle directing the operator to bring the vehicle to a stop and who willfully increases the speed or extinguishes the lights of the vehicle in an attempt to elude such peace officer, or willfully attempts in any other manner to elude the peace officer, or who does elude such peace officer, is guilty of a misdemeanor.

Mr. McFarland points out that he did not increase his speed or extinguish his vehicle lights. But he does not claim that he obeyed the officer's lights and siren. Instead, he drove to his grandfather's residence. Because § 540A(A) applies to one who simply eludes a police officer, we conclude that the evidence was sufficient for the district court to find by a preponderance of the evidence that Mr. McFarland violated this statute.[1]

Mr. McFarland also challenges the sufficiency of the evidence on the charge of malicious destruction of property. This charge was based on cutting off the lock

---

[1] Mr. McFarland cites Oklahoma Uniform Jury Instruction—Criminal 6-29 to support his argument that he did not attempt to elude the officer. But in accordance with Oklahoma law, the jury instruction does not differ from the statute. *See Mitchell v. State*, 2016 OK CR 21, ¶ 24, 387 P.3d 934, 943 ("Trial courts should use the uniform jury instructions if they state the applicable law." (internal quotation marks omitted)).

securing the farmer's gate, in violation of Okla. Stat. tit. 21, § 1760(A)(1). He contends that the evidence established only that he was one of two people involved in cutting off the lock. The farmer testified that he saw two people through his rifle's night-vision scope. R. Vol. 3, at 64. He saw both people at the lock. After they cut the lock, they unchained the gate and it swung open. *Id.* at 66. He did not, however, see which individual actually cut the lock. *Id.* at 93.

Under Oklahoma law, "[a]ll persons concerned in the commission of crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals." Okla. Stat. tit. 21, § 172. "[O]nly slight participation is needed to change a person's status from a mere spectator into an aider and abettor." *Conover v. State*, 933 P.2d 904, 910 (Okla. Crim. App. 1997), *abrogated on other grounds by Bosse v. Okla.*, 137 S. Ct. 1 (2016). Even if Mr. McFarland did not actually cut the lock, he was aware that Mr. Fuller had cut it. *Cf. id.* at 911 (observing that the defendant "was aware that fatal blows were being delivered [by another] to the victim"). In addition, he was present during the process and he went through the gate after the lock and chain had been removed. Thus, the evidence was sufficient for the district court to find by a preponderance of the evidence that Mr. McFarland violated § 1760(A)(1).

Mr. McFarland further asserts that the evidence was insufficient on the trespassing charge. The applicable statute states:

> A. Whoever shall willfully or maliciously enter the garden, yard, pasture or field of another after being expressly forbidden to do so or without permission by the owner or lawful occupant thereof when such property is

8

posted shall be deemed guilty of trespass . . . . For purposes of this section, "posted" means exhibiting signs to read as follows: "PROPERTY RESTRICTED"; "POSTED -- KEEP OUT"; "KEEP OUT"; "NO TRESPASSING"; or similar signs which are displayed. Property that is fenced or not fenced must have such signs placed conspicuously and at all places where entry to the property is normally expected.

Okla. Stat. tit. 21, § 1835(A). Mr. McFarland contends that the sign posted at the gate in question was not conspicuous because it was a single sign that was bent around a pole and angled to one side.

The parties have not cited a case addressing what is required for a sign to be conspicuous as contemplated by the statute, and we have found none. We have considered the exhibits showing the no-trespassing sign in question. We conclude that the evidence was sufficient for the district court to find by a preponderance of the evidence that Mr. McFarland violated § 1835(A).

Finally, Mr. McFarland briefly asserts that he was not on notice to defend against the charges. Although he relies on *United States v. Mullane*, 480 F. App'x 908 (10th Cir. 2012), he has not attempted to show that he was denied the minimum protections due a defendant in a revocation hearing identified in *Mullane See id.* at 910.

9

## V.    Conclusion

Mr. McFarland's claim that he was denied his right of cross-examination at the preliminary hearing is dismissed for lack of jurisdiction.  The district court's judgment is affirmed in all other respects.

Entered for the Court


Monroe G. McKay
Circuit Judge

10